# SUPREME COURT

OF THE

## STATE OF COLORADO.

## April Term, 1906.

[No. 5025.]
[No. 2576 C. A.]

### LIEBHARDT ET AL. V. WILSON.

1. **Corporations—Acts of Stockholders—Responsibility.**

Corporations are not responsible for the actions of their stockholders unless the stockholders are acting in a representative capacity.—P. 4.

2. **Same—Adjunct Corporations—Liability for Debts.**

A corporation was formed by another corporation as an adjunct, and later its stock of goods was turned over to the original corporation and it went out of business. Thereupon others took its incorporation papers, reduced the capital stock, and engaged in business. Held, that the original corporation is not liable for the debts of the revived former adjunct corporation.—P. 4.

3. **Same—Acts of Corporation—Liability of Stockholders—Majority Stockholders.**

A stockholder is not liable for the acts of the corporation beyond his statutory liability; and a majority stockholder, in the absence of a showing that he used his interest for fraudulent purposes, is governed by the same rule.—P. 5.

4. Same.

Where a majority stockholder is not in charge of the business carried on by the corporation, and is not consulted by its manager, he is not personally liable for property purchased by it from a third person, although he in turn bought it for another corporation in which he was interested.—P. 6.

5. Principal and Agent—Commission Merchants—Running Accounts with Purchasers—Purchaser's Liability to Principal.

A purchaser of goods from a commission merchant, who credits him with the amount of the purchase, and in turn sells on credit other goods to him, the balances only being paid upon mutual settlements, is liable to the principal if the commission merchant fails to pay him, as a factor cannot barter the goods of his principal or use them in payment of his debt.—P. 12.

*Appeal from the District Court of Arapahoe County. Hon. John I. Mullins, Judge.*

Action by John T. Wilson against G. G. Liebhardt, The Liebhardt Commission Company, L. F. Liebhardt and W. W. Booth. From a judgment for plaintiff, defendants appeal.          *Reversed.*

Messrs. Doud & Fowler, for appellants.

Mr. T. H. Hood, for appellee.

Mr. Justice Bailey delivered the opinion of the court:

This is an action in the nature of a creditor's bill, brought by appellee against appellants.

It appears that the appellee consigned to The Denver Produce Company, a corporation, a carload of walnuts, to be sold upon commission. The Produce company disposed of the walnuts, but failed to account fully to appellee for the value thereof. Appellee brought suit in the county court of Arapahoe county, and recovered judgment against the company for $1,508.23. He then brought this action, the complaint being in the nature of a creditor's bill, and obtained judgment against defendants, G. G. Lieb-

hardt and the Liebhardt company, from which judgment they appealed.

The cause. of action supporting the judgment against Liebhardt is entirely different from that supporting the judgment against the Liebhardt company, if any cause of action exists against either. The defendant, Liebhardt, was a stockholder in each concern, holding the majority of the stock in the Produce company, and a minority of the stock in the Liebhardt company. The Liebhardt company was not a stockholder in the Produce company. It did not have a dollar invested in the Produce company, either directly or indirectly. The holdings of Liebhardt in the Produce company was his individual matter. If the sale of the walnuts by the Produce company to the Liebhardt company amounted to a conversion of them, it was a conversion by the corporation, and not by defendant Liebhardt. The walnuts were purchased by the Liebhardt company, and credit given by it, and it was applied to the use and benefit of the Liebhardt company.

Liebhardt was not interested in the transaction, except as he was a stockholder of the Liebhardt company. If Liebhardt is indebted to the plaintiff, it is because of his conduct as a stockholder of the Produce company, or because of some individual and personal conversion of plaintiff's property. The Liebhardt company, not being a stockholder in the Produce company, and not having any interest in the stock held by Liebhardt, cannot be said to be responsible or liable for defendant Liebhardt's actions or misconduct, if any existed. If there was a conversion of the property of the plaintiff, or any of the property of the Produce company, by defendant Liebhardt in his personal capacity, it cannot be said that the Liebhardt company would be responsible for that, unless it received the

benefit of the tortious conduct of the individual. Corporations are not responsible for the actions of their stockholders, unless the stockholders are acting in a representative capacity.

Much stress is laid upon the fact that the Produce company was originally formed by the Liebhardt company as an adjunct to the last-named company or, as is said by appellee, to be used as a dummy corporation for defendant herein, and it must be that it is because of this fact that the joint judgment was rendered.

The object for which the Produce company was originally formed is not material in this action, because it appears, and is undisputed, that the Produce company was organized by the Liebhardt company in 1894, to be used as an adjunct to the Liebhardt company, and was actually under the same management, if not nominally so. After a time the Produce company purchased the holdings of the principal competitor of the Liebhardt company, and subsequently turned its stock of goods over to the Liebhardt company, and went out of business in January, 1896, nearly two years before plaintiff consigned his walnuts to the Produce company. Some time after the Produce company went out of business, defendant Liebhardt and one Nunemacher concluded to engage in the commission business, and, instead of forming a partnership or a new corporation, took the papers of the old Denver Produce Company, reduced the capital stock to $2,000, and started their business with $2,000 capital. The defendant company did not have any money invested in the Produce company as thus resurrected. It was not a stockholder. The investment was an individual one, made by defendant Liebhardt, and this was the condition at the time the plaintiff dealt with the concern. This being true, it is absolutely immaterial in this case as to what rela-

tionship existed between the Liebhardt company and the Produce company when the latter was originally formed. In determining the liability of defendant Liebhardt, it must be remembered that, in this transaction, no liability attaches from the mere fact of his being the majority stockholder. There is not one measure of liability for a stockholder holding but a few shares, and another measure for a stockholder holding many shares. The liability of stockholders, as such, is created by statute, and by statute alone, and we have no right to add to those liabilities; neither have we the power to take from them.

Our attention has been called to no provision of the law by which Liebhardt becomes liable, simply because he is a stockholder. If he is liable at all, it is because of his actions as an individual, or because of something which he did that he should not have done, or because of something he did not do that he should have done as an individual, the doing or not doing of which was rendered possible by reason of his being a stockholder. With this in mind, let us determine, if we may, what conduct of his renders him liable for the value of these walnuts.

Liebhardt and Nunemacher agreed to go into the commission business with a capital stock of $2,000. To enable them to do so, and to avoid the expense of forming a new corporation, they reduced the capital stock of The Denver Produce Company, which had theretofore ceased doing business and was an idle corporation. Nunemacher, Mrs. Nunemacher and Mr. Dowd were chosen as the directors of the company. Mr. Nunemacher was the business manager of the concern. He was in absolute control, and so far as the record shows, never advised with the other directors nor with Liebhardt, the principal stockholder.

Liebhardt knew that the car of walnuts was coming. He was informed of this as a representative of the Liebhardt company, for the purpose of determining whether or not the Liebhardt company would undertake to handle a portion of the nuts. He was not advised upon what terms the nuts were taken, nor from whom they came, and was not advised of the fact that they were not paid for and plaintiff fully settled with, until after the action between plaintiff and the Produce company was instituted. Upon the receipt of the walnuts and the attempted delivery of a portion of them to the Liebhardt company by Nunemacher, Liebhardt, acting for the Liebhardt company, refused to accept them upon commission, or to take them at all, except as a direct purchase, for six and one-half cents per pound, and the nuts were purchased by the Liebhardt company at that price.

These are all of the facts upon which the liability of Liebhardt can be said to be based, and they do not warrant a judgment against him.

In the case of *Salomon v. Salomon & Co., Ltd.*, App. Cases 1897, 22, it appears that a trader sold a solvent business to a limited company, with a nominal capital of forty thousand shares of one pound each, the company consisting only of the vendor, his wife, a daughter and four sons, who subscribed for one share each. Twenty thousand shares were issued to the vendor. No shares other than the twenty thousand and seven were sold. The affairs of the company were wound up, and, after satisfying the debentures, there was not enough to pay the ordinary creditors. The action was brought by the company against the majority stockholder.

Lord Halsbury states, in his opinion:

"I observe that the learned judge (Vaughn, Williams J.) held that the business was Mr. Salo-

mon's business, and no one else's, and that he chose
to employ as agent a limited company; and he pro-
ceeded to argue that he was employing that limited
company as agent, and that he was bound to indem-
nify that agent. I confess it seems to me that that
very learned judge becomes involved by this argu-
ment in a very singular contradiction. Either the
limited company was a legal entity, or it was not.
If it was, the business belonged to it, and not to Mr.
Salomon. If it was not, there was no person and no
thing to be an agent at all; and it is impossible to
say, at the same time, that there is a company and
there is not.''

The reasoning applies to the case at bar. If
there was a corporation, and the corporation con-
ducted the business, it cannot be said that Liebhardt
is liable for the acts of the company beyond his
statutory liability as a stockholder.

The plaintiff dealt with the corporation as such,
and not with the stockholders as individuals. The
fact that Liebhardt owned the majority of the stock
would not tend to make him liable if, under the same
facts, he was not liable had he owned but one share.

Much stress is laid upon the proposition that
Liebhardt was the owner of the majority of the stock
of the corporation. It is said that he owned all of
the shares except two or three. The undisputed
facts appear to be that, at the time of the reorganiza-
tion of the Produce company, Liebhardt and Nune-
macher each agreed that Liebhardt should have one
thousand and one shares of the stock, and Nune-
macher nine hundred and ninety-nine shares. How-
ever, one share was issued to Mr. Dowd and one
share to Mrs. Nunemacher, to enable them to act as
members of the board of directors.

Mr. Nunemacher did not have the means with
which to pay for his stock. He borrowed one thou-

sand dollars from Liebhardt, giving his promissory note signed by his father-in-law, and further secured the payment of it by transferring his stock to Liebhardt. This note was subsequently paid and surrendered to Nunemacher, but, for some reason which is not explained, the stock was not re-transferred to Nunemacher.

Plaintiff argues that this makes Liebhardt the owner of all of that stock, because of the provision of the statute requiring its transfer upon the books of the company. It is unnecessary for us to pass upon that question.

Credit was not extended to the corporation upon the strength of Liebhardt's owning the majority of the stock. On the contrary, the plaintiff complains because he, with the balance of the public, was kept in ignorance of the fact that Liebhardt was a stockholder at all. However, be this as it may, we do not consider that it is important.

"How does it concern the creditor whether the capital of the company is owned by many persons in equal shares, with the right to an equal share of the profits, or whether it is almost entirely owned by one person who practically takes the whole of the profits? The creditor has notice that he is dealing with a company, and he knows, or ought to know, the liability of the members."—Lord Herschell in *Salomon v. Salomon, supra.*

The creditor in the present case gave credit to and contracted with the corporation. The effect of the decision below is to give him the benefit of trading and contracting with a copartnership.

It is asserted in the complaint that Liebhardt owned and controlled the corporation, and this statement is the foundation of much of the argument of plaintiff. However, the allegation does not appear to have any support except that contained in the com-

plaint. The testimony is to the effect that Liebhardt took no part in the management of the concern, except that monthly balance sheets were submitted to him.

Lord McNaughten, in *Salomon v. Salomon, supra*, at page 53, says:

"It has become the fashion to call companies of this class 'one-man companies.' That is a taking nickname, but it does not help one much in the way of argument. If it is intended to convey the meaning that a company which is under the absolute control of one person is not a company legally incorporated, although the requirements of the law may have been complied with, it is inaccurate and misleading; if it merely means that there is a predominant partner, possessing an overwhelming influence and entitled practically to the whole of the profits, there is nothing in that that I see contrary to the intention of the law or against public policy or detrimental to the interests of creditors. If the shares are fully paid up, it cannot matter whether they are in the hands of one or many. If the shares are not fully paid, it is as easy to gauge the solvency of an individual as to estimate the financial ability of a crowd."

There is nothing in the record tending to show that Liebhardt used any power, authority or influence which he might have had as the majority stockholder, in directing or controlling the management of the Produce company, for fraudulent purposes or otherwise, until long after this walnut deal was consummated, and then only to the extent of closing the business, he being dissatisfied with Nunemacher's management.

One of the by-laws of the corporation provides that the board of directors shall resign upon request of the majority stockholder. If they fail to resign,

the majority stockholder may remove them. It is said that this by-law is illegal, and was adopted so that the majority stockholder would have absolute control of the corporation, and could use it for fraudulent purposes if he so desired. However, there is no proof to show that the majority stockholder ever attempted to exercise this power. He never requested the resignation of the directors, nor made any change in the management. It is one thing to have the power to commit a fraud, but quite another to exercise it.

A number of authorities cited by plaintiff are to the effect that the board of directors hold the property of a corporation in trust for the creditors, and that a majority stockholder who wrongfully controls the board of directors assumes this trust. We have examined these authorities, and find that they are not in point under the facts of this case. It will serve no good purpose to review them at length. We may, however, refer to Nix v. Miller, 26 Colo. 203, as being typical of the others.

In the Nix case, it appears that Home and Nix, as copartners, were engaged in the mercantile business. Their copartnership was in debt. They formed a corporation, transferred the firm property to the corporation, and the corporation assumed the debts. Nix was a member of the board of directors. The corporation used the property of the company to pay the individual debts of one of the directors. A creditor brought an action against the directors. Nix defended, upon the ground that he paid no attention to the management of the corporation, and the court held that he could not relieve himself of liability where, by his negligence and inattention to the corporation business, he permitted his co-directors to misappropriate the funds of the corporation, and

that he could not escape liability because he did not share in the acts of misappropriation.

In the present action, defendant Liebhardt was not a member of the board of directors, and did not assume to control or direct the affairs of the company. We know of no provision of the law which makes the liability of a stockholder dependent upon the extent or degree of interest which may be held by him in the corporation, in the absence of a showing that he used the influence, which he might have by reason of his interest, for fraudulent purposes.

In the case of *Louisville Banking Co. v. Eisenman Bros. & Co.*, 19 L. R. A. 684, it appeared that a corporation styled "Eisenman Bros. & Co." was duly organized, and J. G. Eisenman subsequently became the owner of all of the capital stock which had been issued. He indorsed certain drafts in the name of the corporation. The corporation failed, and the court found that Eisenman was not personally liable upon the drafts, they being the obligations of the corporation, and not of the individual. The fact that the individual was the sole owner of the corporate stock was held not to make him personally liable. This is in line with the decision in *Salomon v. Salomon, supra*.

As to the Liebhardt company, it appears, from the testimony, that it purchased from the Produce company 9,640 pounds of plaintiff's walnuts at the agreed price of 6½ cents per pound, which would amount to $626.60. The manner of doing business between these two corporations, according to witness Liebhardt's testimony, is as follows:

"We gave them credit when we bought goods from them, but when we sold goods to them, we charged them with them, and when we came to settle, if we owed them, we would give them a check, and,

if they owed us, they would give us a check for the difference.''

The business of factors or commission merchants may not be practiced in this manner to the prejudice of the principal. A factor has authority to sell goods of his principal, but he has not the power to use them for the payment of debt, nor to barter nor exchange them for other goods.—*Geurreiro v. Peile,* 3 Barn. & Ald. 616; *Wheeler & Wilson v. Givan,* 65 Mo. 91; *Warner v. Martin,* 11 Howard 220.

It is contended that the manner in which this business was conducted was binding upon plaintiff, because it was according to the custom of commission merchants in the city of Denver. Under somewhat similar circumstances, in the case of *Baxter v. Sherman,* 73 Minn. 441, the court said:

"This so-called custom was an arrangement among the local dealers solely for their own convenience, which they acted on entirely in reliance upon the financial responsibility of each other. If, in the absence of any such custom, defendant would have no right to apply the price of plaintiff's fruit on the individual debt of Shea, the custom could give him no such right, for the effect of such a custom would be to permit an agent to appropriate his principal's property to the payment of his own debt, which would be contrary to the well-established principles of law, as well as good morals. Therefore, such custom would be void."

While plaintiff is entitled to a judgment against the defendant corporation, this cause must be reversed, for the reason that the judgment rendered was excessive. The value of the walnuts purchased from the factor was $626.60. After the Produce company went out of business, it was determined that the Liebhardt company was indebted to the Produce

company, on account of their mutual dealings, in the sum of $535.85. This amount was paid by the Liebhardt company to the attorney of the Produce company, and by him paid into court to be applied upon plaintiff's judgment. Plaintiff received the money. After deducting this from the price of the walnuts, ·$626.60, it would leave $90.75, for which amount, with interest from the date of the former judgment, plaintiff should recover from The Liebhardt Commission Company. The action should be dismissed as to the other defendants.

The judgment will, therefore, be reversed and remanded for further proceedings, in accordance with the foregoing opinion.

*Reversed and remanded.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GODDARD concur.