No. 19,108.

WILLIAM M. MURRAY, ET AL. *v.* STANLEY ROCK, d/b/a
BRENTWOOD MEAT MARKET.

(364 P. [2d] 393)

Decided August 28, 1961.

Mr. VERNON K. SESSIONS, for plaintiffs in error.

Mr. ALAN STERNBERG, Mr. RALPH C. TAYLOR, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

562

Plaintiffs in error, Murray and Bach, will be referred to as "Commercial"; and the corporate plaintiff in error will be referred to as the corporation. The defendant in error will be mentioned by name.

The action was commenced by Rock who alleged in his complaint that he was the owner of a certain retail meat business; that in January, 1958, he entered into a written contract with Commercial under which the latter was to provide certain refrigeration equipment, and do certain remodeling of the premises occupied by Rock; all for a total consideration of $10,500.00; and that at the time of the making of said agreement the sum of $3,500.00 was paid to Commercial by Rock.

When the work commenced it was discovered that the proposed remodeling did not receive the approval of Rock's landlord and that the contemplated improvements were out of harmony with the requirements of certain applicable zoning restrictions and other building ordinances.

In April, 1958, the partners who had operated as Commercial incorporated their business and created the corporate plaintiff in error. Rock alleged that the work contemplated by the original contract was stopped because of the refusal of the landlord to agree to the changes which had been planned, and because of the poor workmanship of Commercial; and that Rock had expended $250.00 to cover up what had been started.

Rock further alleges that on or about May 25, 1958, the "defendants" (which of course includes the individuals Murray and Bach and the corporation) agreed orally with Rock that certain of the equipment could be used on the premises occupied by plaintiff without the remodeling and expansion as originally contemplated, and that under said oral agreement a four-foot section was added to the McCray cooler; a compressor, coil and fan were installed; that all of this was so installed as to be a part of a walk-in cooler then on the premises; and that the compressor, coil and fan then on the premises

were replaced by new and additional parts. Rock asserts that the compressor, coil and fan were represented by defendants to be of sufficient capacity to take care of the cooler as enlarged, and to be of greater cooling capacity than that which was replaced. That in fact it was not. That the coil and fan were defective and inadequate, and the entire job was done in a slipshod and unworkmanlike manner; that it did not perform satisfactorily and did not keep the temperature of the cooler low enough. He further alleged the failure of defendants to correct the defects and that on the 15th of June, 1958, the contract was terminated.

Rock further alleged that he spent and will be required to spend $500.00 in repairing and properly installing the equipment in question; that he has had a loss of profits in the sum of $3,000.00 and that he has been deprived of interest on the $3,500.00 down payment made by him.

The prayer of the complaint was for return of the down payment of $3,500.00 with interest; $3,750.00 compensatory damages, $5,000.00 punitive damages, for costs and interest to date and other relief.

Commercial and the corporation by answer denied that the work was stopped by plaintiff's landlord; denied the expenditure of $250.00 for cover-up work and generally denied any fault or failure to perform on their part; denied the existence of any damages; and alleged affirmatively that plaintiff failed to meet requirements of his landlord and that the breach of the contract was by the plaintiff.

By way of counter-claim, defendants set forth that plaintiff had failed in various respects in the performance of his part of the agreement; that defendants were damaged in the sum of $5,700.00 in loss of profits on the job by reason of plaintiff's refusal to permit completion, and that they were damaged in loss of credit due to the action of plaintiff. Defendants prayed for $5,700.00 loss

of profits, plus interest, $2,000.00 for damage to their credit, and $2,000.00 exemplary damages.

In the trial of the case, issues were drawn as to which contract applied; who was liable to whom and for what; to what extent were the individuals liable and to what extent the corporation was liable. Issues also were drawn as to whether Rock was at fault for the non-completion of the contract or contracts, or whether the fault of Commercial or the corporation prevented completion. Rock sought to prove his claim for $3,750.00 compensatory damages and the return of his deposit of $3,500.00. He contended that the door of the cooler would not fit, that the fan, compressor and coil were faulty and inadequate, that he sustained large losses of meat as the result thereof, and was compelled to pay for overtime work of his employees to mitigate his losses. That it was necessary for him to employ others to put the walk-in cooler in usable condition, and to complete other improvements which defendants had contracted to do. In the face of these numerous contentions of the parties, the trial court made only general findings of fact, as follows:

"The Court finds generally in favor of the plaintiff and against the defendants on both the amended complaint and the amended counter-claim, and assesses damages of the plaintiff and against the defendants in the sum of $3,902.37."

The findings and judgment are recorded in the record as follows:

"And the Court having heard the evidence produced herein as well on behalf of said defendants as of the plaintiff and the arguments of counsel DOTH FIND generally in favor of the Plaintiff and against the defendants on the Complaint, Amended Complaint and the Amended Counterclaim and assesses the damages of plaintiff and against the defendants in the sum of $3,902.37."

Commercial and the corporation argue several grounds

for reversal. We find it necessary to consider only one.

QUESTION FOR DETERMINATION.

*Are the general findings of the trial court sufficiently comprehensive to provide a basis for a review by this Court?*

■ The answer is in the negative. We are unable to determine from the findings whether this judgment is for return of the down payment; whether it is based on the alleged first contract which was in writing and to which the corporation was not a party, or for breaches of the second oral contract, or for both. Nor can we ascertain whether the damages assessed include interest, or whether the damages are all compensatory, and if so, for what they were allowed. We cannot determine the basis of any single element of damages which the trial court allowed, whether it was for cover-up work, loss of profits, loss of meat, expense of overtime payments to employees, or expense of having others do the work which defendants were supposed to do under their contracts. Nor do we know whether defendants were given credit for any part of the work done.

■ We have frequently held that the findings of the trial court required by Colo. R.C.P. 52 (a) may be either oral or written at the discretion of the trial court. We have also held that:

"The court has a duty to make one or the other, and if made orally to see that his statement thereon is transcribed in full. In either event such findings must be so explicit as to give the appellate court a clear understanding of the basis of the trial court's decision and to enable it to determine the ground on which it reached its decision." *Mowry v. Jackson,* 140 Colo. 197, 343 P. (2d) 833.

Here the pronouncement of the trial court does none of these things, nor does it inform this Court of the basis for its decision.

■ Under the comparable federal rule it has been held that where the necessary findings of fact are lack-

ing for a party to seek relief in an appellate court, the correct procedure is not to dismiss the writ but rather to vacate the judgment and remand the case to the trial court for appropriate findings of fact. If this cannot be done, then the judgment must be reversed and remanded for a new trial. *Irish v. U.S.* (9 Cir. 1955), 225 F. (2d) 3.

In this case, we take judicial notice of the fact that the judge who heard the case is no longer serving on the bench. The judgment is therefore reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE HALL and MR. JUSTICE MCWILLIAMS concur.