money was obtained by the defendant "in the absence of any agreement."*

On this record it is clear that defendant is entitled to summary judgment in its favor.

The order of the Supreme Court, New York County (BAER, J.), entered June 16, 1976, denying defendant's motion for summary judgment pursuant to CPLR 3212, which was considered by Special Term as one made pursuant to CPLR 3211 to dismiss the complaint for failure to state a cause of action, should be reversed, on the law, with costs and disbursements, and the motion for summary judgment pursuant to CPLR 3212 should be granted.

BIRNS and LANE, JJ., concur; NUNEZ, J., dissents and votes to affirm for reasons stated by BAER, J., at Special Term.

Order, Supreme Court, New York County entered on June 16, 1976, reversed, on the law, the motion granted and the complaint dismissed. Appellant shall recover of respondents $60 costs and disbursements of this appeal.

GROW CONSTRUCTION CO., INC., Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 51499.)

Third Department, February 17, 1977

---

* It has been aptly observed: "A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex acquo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual in order to fit the cause of action to the contractual remedy" *(Miller v Schloss,* 218 NY 400, 407).

*Louis J. Lefkowitz, Attorney-General (Richard J. Dorsey* and *Ruth Kessler Toch* of counsel), for appellant.

*Berman, Paley, Goldstein & Berman (David R. Paley* and *Murray Tim Berman* of counsel), for respondent.

LARKIN, J. Claimant Grow Construction Co., Inc., and the appellant State of New York entered into a highway construction contract dated August 29, 1966 for the construction of a portion of Interstate Route 503. The contract was for the construction of a divided four-lane highway slightly under one mile in length, with two bridge structures, connecting Orange County in New York and Pike County in Pennsylvania. By agreement between the respective States the major bridge structure over the Delaware and Neversink Rivers linking the two States, Bridge 1-A, was to be designed and constructed by New York. Claimant began work on this contract in September, 1966, and the State accepted the work as complete on December 6, 1968. Although claimant actually finished its work on October 26, 1968, well before the August 1, 1969 contract completion date, various unanticipated difficulties were encountered in the course of the construction, especially with respect to the construction of Bridge 1-A. These difficulties precipitated the instant claim.

The first cause of action, relating to moneys concededly due to claimant, was severed with the question of interest to abide the trial. Neither party has addressed this cause of action, which we affirm. In the second cause of action claimant alleged that the State interfered with, prevented and made more costly claimant's performance of the contract, *inter alia,* as follows: design which was inadequate and defective, negli-

gently prepared and not in accordance with good engineering practice; inadequate and misleading bidding information; unreasonable delay both in preparing and approving new plans and designs and in making decisions; prevention of the proper co-ordination of its work by claimant; various other acts and omissions delaying and impeding claimant's work. These allegations were repeated in subsequent causes of action, as claimant demanded judgment in the sum of $780,323.21 and the return of its bond.

The most significant items of increased cost and delay developed at the trial were the results of difficulty in construction and dewatering of cofferdams for Bridge 1-A, differences between rock elevations upon which the State based its design of Bridge 1-A and actual elevations, and the failure of the State to act promptly in cases where a redesign was necessary in the course of the construction. The Court of Claims found the State liable on all causes of action except the seventh, for which the contract price paid for extra work was found to be sufficient. The court concluded, among other things, that claimant was "misled by the State's boring information and also was required to rely on a design prepared by the State which in some respects was negligently and not competently done" and also found the State guilty of delays in decision making and in failing to timely acquire certain property. Although we do not agree with each and every finding of the Court of Claims, we are of the view that its ultimate conclusions that the State was guilty of supplying misleading bidding information, of negligent design, and of delay "are substantially supported by the record" *(Public Constructors v State of New York,* 55 AD2d 368 [Jan. 20, 1977]). The arguments of the State, essentially premised upon mistakes made by claimant in its performance of the contract, while not sufficient to absolve the State from liability, do provide grounds for an apportionment of liability by this court.

It is undisputed that the claimant experienced unanticipated difficulties in dewatering certain cofferdams, used in the construction of piers or footings, at Bridge 1-A. Claimant contends that these difficulties were unanticipated because the State misrepresented the subsurface soil conditions in the contract. In the special bridge notes in the contract proposal (part of the contract), the bidders were informed: "Bridge 1-A: It is anticipated that the foundation material at the site of this structure will consist of varying layers of silt and sand

overlying a very compact layer of glacial till which overlies bedrock at varying depths". This description, which would indicate soils of low permeability ideal for constructing and dewatering cofferdams, is conceded by the State to have been incorrect. Although the boring information supplied did indicate the presence of gravel and boulders, which when predominant may cause difficulty in dewatering, their omission from the soil description in the special bridge notes may very well have led claimant to believe that the gravel and boulders which did exist were incidental, not predominant, factors.

As in numerous recent cases, the State relies on various exculpatory clauses to escape liability herein. It is axiomatic, however, that "[i]n a construction contract between the State and an individual, which contains representations as to existing conditions affecting work thereunder as well as an exculpatory clause relieving the State of liability and requiring personal inspection of the contract site, liability, nevertheless, may attach to the State if said conditions are not as represented and (1) inspection would have been unavailing to reveal the incorrectness of the representations *(Foundation Co. v. State of New York,* 233 N.Y. 177, 184-185; *Faber v. City of New York,* 222 N.Y. 255, 260), or (2) the representations were made in bad faith *(Young Fehlhaber Pile Co. v. State of New York,* 265 App. Div. 61; *Jackson v. State of New York,* 210 App. Div. 115, affd. 241 N.Y. 563)" *(Warren Bros Co. v New York State Thruway Auth.,* 34 AD2d 97, 99, affd 34 NY2d 770. See, also, *Public Constructors v State of New York, supra,* p 372). There was testimony on behalf of claimant that it would have taken at least six months to have done an independent subsurface soils investigation. Additionally, it appears that the State had access to further information which, had it been supplied to claimant, may have alerted claimant to the potential problems with the soils at the bridge site and which, in any event, indicates that the State should have known that its soil description was misleading.

The claim of faulty design is based upon the necessity of dewatering the cofferdams to an extent far greater than anticipated, and changing pier elevations because of the aforementioned misrepresentation of soil conditions and faulty rock elevations supplied for certain of the piers for Bridge 1-A. As to the first claim, it is clear from the record that claimant was forced to do considerably more pumping than anticipated because of the coarser, more permeable soil found. The second

aspect of claimant's argument regarding improper design also has merit in that it appears that as to at least two of the piers the State's design relied upon clearly erroneous rock elevations.

The record also reveals that the State was responsible for various delays in the construction. Initially, we must address the State's argument that because the work was completed and the job was accepted well before the August 1, 1969 contract completion date, there can be no recovery for increased costs due to delay. This claim is without merit. The proper rule was enunciated in *D'Angelo v State of New York* (46 AD2d 983, 984, affd 39 NY2d 781) in which this court stated: "claimants could rightfully expect to operate free from needless interference by the State, and, therefore, they are entitled to compensation where, as here, they could have completed their work ahead of schedule and thereby saved substantial sums of money, absent the delays caused by the State". In addition to the two causes of delay previously discussed, misrepresentation of soil conditions and defective design, the record contains ample evidence of delays caused by the State's failure to promptly order redesigns and construction changes to meet problems which arose during the construction. In particular, the State appears to have been remiss in approving redesign changes suggested by the claimant to meet the problem of dewatering the cofferdams.

Finally, we must consider the proper apportionment of damages between the State and the claimant. Noting that the State was entitled to a reasonable period of time in which to make the necessary decisions as problems arose, and that certain causes of delay, such as high waters, were beyond the control of the State, the Court of Claims reduced all damages by 10%. In a nonjury case this court's inquiry is not limited to whether the findings were supported by some credible evidence, but rather if it appears on all the credible evidence that a finding different from that of the trial court is not unreasonable, this court must weigh the probative force of the conflicting evidence and inferences *(Shipman v Words of Power Missionary Enterprises,* 54 AD2d 1052). Then it is within the power of this court to grant the judgment which upon the evidence should have been granted by the trial court *(Spano v Perini Corp.,* 25 NY2d 11; *McCarthy v Port of N. Y. Auth.,* 30 AD2d 111). Because we find sufficient evidence in the record to permit us to make new findings, and despite the

impossibility of establishing a precise formula for computing damages *(Public Constructors v State of New York, supra)*, we conclude that the interests of justice mandate a 75% to 25% apportionment in this case. Our primary reason for attributing a greater percentage of the liability to claimant than was assessed by the Court of Claims is our conclusion, based upon an extensive examination of this record and the briefs submitted by the parties, that the dewatering problems experienced by claimant were at least in part the result of its own actions. In addition, we conclude that the award of $15,000 for traffic control in the fifth cause of action is without support in the record and should be modified by reducing it to $5,000.

By way of recapitulation, we adjudge, on the law and the facts, with regard to the causes of action and items thereunder as follows:

First cause of action, affirmed.

Second cause of action, modified as follows: Item (a) modified by reducing the award to $105,416.01. Item (b) modified by reducing the award to $99,478.37. Item (c) modified by reducing the award to $13,788.53. Item (d) modified by reducing award to $3,750.

Third cause of action, modified by reducing the award to $1,182.18.

Fourth cause of action, modified by reducing the award to $1,727.08.

Fifth cause of action, modified by reducing the award to $5,000.

Sixth cause of action, modified as follows: Labor is reduced to $73,555.15. Equipment is reduced to $115,465. Material is affirmed and unchanged.

Seventh cause of action, affirmed.

Eighth cause of action, modified by reducing the award to $17,332.

Ninth cause of action, modified by reducing the award to $11,566.96.

Total award for causes of action two through nine is $459,377.18.

The judgment should be modified, on the law and the facts, so as to reduce the award on the second cause of action to $222,432.91; so as to reduce the award on the third cause of action to $1,182.18; so as to reduce the award on the fourth cause of action to $1,727.08; so as to reduce the award on the fifth cause of action to $5,000; so as to reduce the award on

the sixth cause of action to $220,480.48; so as to reduce the award on the eighth cause of action to $17,332; so as to reduce the award on the ninth cause of action to $11,566.96; for a total award, inclusive of the second, third, fourth, fifth, sixth, eighth and ninth causes of action of $479,722.16, together with appropriate interest, and, as so modified, affirmed, without costs.

SWEENEY, J. P., KANE, MAHONEY and MAIN, JJ., concur.

Judgment modified, on the law and the facts, so as to reduce the award on the second cause of action to $222,432.91; so as to reduce the award on the third cause of action to $1,182.18; so as to reduce the award on the fourth cause of action to $1,727.08; so as to reduce the award on the fifth cause of action to $5,000; so as to reduce the award on the sixth cause of action to $220,480.48; so as to reduce the award on the eighth cause of action to $17,332; so as to reduce the award on the ninth cause of action to $11,566.96; for a total award, inclusive of the second, third, fourth, fifth, sixth, eighth and ninth causes of action of $479,722.16, together with appropriate interest, and, as so modified, affirmed, without costs.