Jerome P. McHUGH; Jerome P. McHugh as Trustee; Recreation Land Company; Dwight L. Johnson; and Denver Internal Medicine Associates, a Professional Company Profit Sharing Trust, Plaintiffs-Appellees,

v.

FICOR, INC., a Corporation of the District of Columbia; John F. Forstmann; Vankirk E. Fehr; Bruce B. Brundage; Fourven Limited Partnership, a Colorado limited partnership; The Recreational Environmental Development Corporation; and Geoffrey W. Robertson, Defendants-Appellants,

and

Herbert J. Rothenberg; H. Blair Carlson; Barry W. Frank; William E. Mann; Donald L. Patton; and all other trustees and beneficiaries of the Denver Internal Medicine Associates Profit Sharing Trust, Additional Defendants on the Counterclaim-Appellees.

No. 78–268.

Colorado Court of Appeals, Div. III.

Dec. 13, 1979.

Rehearing Denied Jan. 24, 1980.

Certiorari Granted May 19, 1980.

Roath & Brega, P. C., Roger P. Thomasch, Denver, for plaintiffs-appellees and additional defendants on the counterclaim.

Davis, Graham & Stubbs, Thomas S. Nichols, Frank R. Kennedy, Denver, for defendants-appellants.

SMITH, Judge.

In this action by the creditors of a defunct corporation, the defendants appeal from a money judgment entered against them, jointly and severally, and from the trial court's holding that their counterclaim had been waived. We affirm in part, reverse in part, and remand with directions.

On November 18, 1971, the plaintiffs sold 14.557 acres of land to be used for a condominium complex and a lodge to defendant Ficor, Inc. Ficor was incorporated in the District of Columbia, but was transacting business in Colorado.

The officers, directors, and shareholders of Ficor were as follows: defendant John F. Forstmann, president, director, and owner of 36% of the stock; defendant Vankirk E. Fehr, vice-president, secretary, director, and owner of 27% of the stock; defendant Bruce B. Brundage, treasurer, director, and owner of 32% of the stock; defendant Geoffrey W. Robertson, owner of 5% of the stock; Andrew Isaacson, assistant secretary, attorney, not a stockholder or a defendant in this action.

The purchase price of the land was $825,-466.36, and was to be paid $10,000 in cash at the time the purchase contract was executed, $749,103.92 by assuming responsibility for payment of a note previously executed by plaintiffs to Berry & Stark, a partnership, and the balance in cash at closing. The note assumed by Ficor was payable in nine annual installments beginning November 25, 1971, and was secured by a first deed of trust on the subject property in favor of Berry & Stark. Because plaintiffs did not secure a release from Berry & Stark, they too remained liable on the note. Ficor's obligations under the assumption agreement were secured by a second deed of trust on the subject property in favor of plaintiffs. Ficor was entitled to releases from the deed of trust in favor of plaintiffs on substantially the same terms as plaintiffs were entitled to releases from Berry & Stark. The effect of the release provisions was that for a specified amount of principal paid by Ficor on its obligation to plaintiffs arising from the assumption agreement, plaintiffs would release one square foot from the deed of trust in their favor, and Berry & Stark would release the same square foot from the deed of trust in its favor.

On November 19, 1971, Ficor conveyed a 3.545 acre portion of the land to the public trustee to secure a note for $250,000 from Security National Bank. A major portion of the loan proceeds was used to pay an installment on the Berry & Stark note that Ficor was obligated to pay under the terms of the assumption agreement. Thereafter, on November 29, 1971, the 3.545 acre parcel was released from the deed of trust in favor of plaintiffs and from the deed of trust in favor of Berry & Stark.

On January 3, 1972, defendant Recreational Environmental Development Corporation (REDCO), a corporation, was organized by the individual defendants. The officers, directors, and shareholders of REDCO were as follows: defendant Forstmann, president, director, and owner of 36% of the stock; defendant Fehr, executive vice-president, director, and owner of 27% of the stock; defendant Brundage, vice-president and treasurer, director, and owner of 32% of the stock; defendant Robertson, vice-president, director, and owner of 5% of the stock.

On March 1, 1972, defendant Fourven was organized as a limited partnership by the individual defendants. Defendants Forstmann, Fehr, Brundage, and Robertson, were the general partners. It is unclear, however, if Fourven ever had a limited partner, and thus whether it ever functioned as a limited partnership.

On March 1, 1972, approximately four months after the purchase of the land by Ficor, Ficor was dissolved. Upon dissolution, all the assets of Ficor, $38,728.36 in cash, and the 14.557 acres of land were distributed by Ficor directly to its shareholders, the individual defendants. The distribution was based upon the percentage of stock ownership of the individual defendants. The individual defendants in turn conveyed the assets to REDCO and Fourven. REDCO received the 3.545 acres subject to the deed of trust in favor of Security National Bank of Denver, and $36,728.36 in cash. Fourven received the remaining 11.-012 acres, subject to deeds of trust in favor of Berry & Stark and plaintiffs, plus $2,000 in cash. No notice of the dissolution was sent to the creditors of Ficor, and no provision was made for payment of any obligations to Ficor's creditors.

In June 1972, REDCO, and the defendants individually, obligated themselves on a 2.5 million dollar construction loan secured by a deed of trust on the 3.545 acres in favor of Security National Bank, and further secured by certain personalty. On September 8, 1972, plaintiffs and Berry & Stark released a .442 acre portion of the 11.012 acres Fourven had received from Ficor. Also, on September 8, 1972, REDCO borrowed $240,000 from Security National Bank. The note representing this debt, in addition to being personally guaranteed by the individual defendants, was secured by a deed of trust, but what land was encumbered is not clearly indicated in the record.

On November 22, 1972, Fourven borrowed $150,000 from Security National

Bank, securing the note by a deed of trust in favor of the bank on 2.951 acres of the 11.012 acres Fourven had received from Ficor. From the loan proceeds, Berry & Stark was paid $136,997.65. Thereafter, Berry & Stark and plaintiffs released the 2.951 acres from their respective deeds of trust.

In late 1972, and in 1973, the project encountered significant financial difficulties. In 1973, there was a default on the Berry & Stark note, and plaintiffs instituted this suit. Plaintiffs foreclosed on the 7.619 acres remaining on their deed of trust which secured Ficor's obligations under the assumption agreement, and procured the land by bidding $413,000. Security National Bank foreclosed on the remaining portions of the land, that is the 3.545 acre, 2.951 acre, and .442 acre parcels, but accepted deeds from REDCO and Fourven in full satisfaction of their debts prior to the foreclosure sale.

### I. *The Applicable Law*

Although Ficor is a District of Columbia corporation, the parties hereto have tried this case applying the Colorado Corporation Code. We assume that this was the case because Ficor was authorized to transact business in Colorado, and because foreign corporations which are authorized to transact business in Colorado are subject to the Colorado Corporation Code, § 7–9–102, C.R.S.1973. Our review is based upon that theory.

### II. *Dissolution of Ficor*

■■ The Colorado Corporation Code, § 7–8–105, C.R.S.1973, requires a corporation to make adequate provision for the discharge of all corporate obligations upon dissolution. The defendants assert that because the land was secured by a deed of trust in favor of the plaintiffs, the defendants made adequate provision for the corporation's obligations. We disagree.

The record reveals that Ficor's obligation under the assumption agreement was not a non-recourse obligation, and therefore, that plaintiffs were entitled to look to all of Ficor's assets for satisfaction of the obligation. Thus, plaintiffs' remedy was not limited to foreclosure on the deed of trust. Once Ficor was dissolved and the assets were distributed so as to be beyond the reach of its creditors, Ficor was in violation of § 7–8–105, C.R.S.1973. When a corporation wrongfully distributes its assets to its stockholders, the directors are jointly and severally liable to the corporate creditors for the value of the assets distributed. Section 7–5–114(3) C.R.S.1973. Stockholder recipients are also liable. *See EPCON Co. v. Bar B Que Baron International, Inc.,* 32 Colo.App. 393, 512 P.2d 646 (1973).

■■ Liability under this rule is appropriate here. Notwithstanding defendants' assertion that they did not contract for any personal liability, their personal liability in this case arises not from the terms of the contract, but from the wrongful corporate distribution. To have avoided personal liability upon dissolution, the defendants, prior to dissolution, should have insured that there was adequate provision for the satisfaction of the corporate obligations. This they could have achieved, for instance, by obtaining a release or consent from the plaintiffs prior to distribution. Having failed to take such precautions, however, the defendants must be held personally liable to the extent of the value of the corporate assets improperly distributed. *See EPCON Co., supra.*

### III. *Extent of Liability*

■■ The defendants argue that, even if liability is appropriate, the plaintiffs suffered no loss because of the defendants' action. This assertion is based upon the claim that had the corporation not been wrongfully dissolved, and had the project thus continued under Ficor, the corporate assets would have been depleted and the plaintiffs would have had no remedy except under their deed of trust. We disagree with this rationale.

The right to recovery is not premised upon the "ultimate probable result," but rather is, as discussed above, based upon whether there was compliance with the corporation code. It may be true that if Ficor

had remained a corporate entity, and the corporate assets had been depleted by the failure of the project, then the individual defendants would have incurred no personal liability to the plaintiffs. This, however, is not what happened. The corporate assets were distributed in violation of the law, and therefore, circumstances at that time, the time the cause of action accrued, determine the obligations of the defendants. Section 7–5–114(3), C.R.S.1973.

### IV. *Joint and Several Liability*

Section 7–5–114(3), C.R.S.1973, makes directors jointly and severally liable when a distribution is accomplished without adequate provision being made to satisfy corporate obligations. Although this court has held that only the damaged corporation has a cause of action under the statute, *Rosebud Corp. v. Boggio*, 39 Colo.App. 84, 561 P.2d 367 (1977), judgment creditors of a corporation are entitled to enforce their judgments by enforcing any cause of action belonging to the corporation, *J. H. Hincke Printing Co. v. Bailey*, 83 Colo. 242, 263 P. 719 (1928), notwithstanding the fact that the corporation has been dissolved. Section 7–8–122, C.R.S.1973. Because the directors of Ficor distributed Ficor's assets without making adequate provision for the satisfaction of corporate obligations, and because the creditors are able to assert the rights that Ficor had even though Ficor is dissolved, we conclude that directors of Ficor are jointly and severally liable.

### V. *Calculation of Damages*

Defendants contend that even under the theory of recovery adopted by the trial court, the amount of the judgment is excessive. On this issue we remand for further findings.

As we held above, liability attaches for the wrongful corporate dissolution to the extent of the value of the corporate assets distributed. The value of the assets, however, must be determined at the time immediately prior to the improper corporate distribution. *Cf.* § 7–4–123, C.R.S. 1973 (1978 Cum.Supp.). Thus, the value of the assets to be considered in determining the amount of the judgment is the market value of the assets less the amount of the liens against them.

Here, the assets distributed were the $38,728 in cash and the land. At the time of the distribution, the land was divided into a 3.545 acre parcel and an 11.012 acre parcel. The court found the 3.545 acre parcel to have had a market value of $336,139 at the time of dissolution. Because the 11.012 acre parcel was divided subsequent to the distribution, the court valued this parcel by determining the combined value of the 2.951 acre portion and the .442 acre portion to be $292,600 at the time of dissolution. The court, however, failed to value the remaining 7.619 acre portion of the 11.012 acre parcel.

The court found that the obligations secured by liens against the land were $250,00 owed to Security National Bank secured by the 3.545 acre parcel, and $736,168 owed to Berry & Stark under the assumption agreement which was secured by the remaining 11.012 acre parcel. After a thorough review of the record, we are unable to determine how the trial court derived $736,168 as the amount owed to Berry & Stark under the assumption agreement on the date of dissolution. The record reveals that as of November 18, 1971, $749,103.92 remained due on the Berry & Stark note. Within a week, however, defendants made a $118,-189.78 payment on this obligation. Thus, even recognizing that a portion of the $118,-189.78 payment was interest, we are unable to ascertain how the obligation on the Berry & Stark note can be only approximately $13,000 less on March 1, 1972, than it was three and one-half months earlier. Because there are insufficient findings for us properly to review the determination by the trial court of the amount remaining due under the assumption agreement and consequently the magnitude of the encumbrance against the 11.012 acre parcel, we must remand this matter to the trial court with directions to reconsider and to clarify its determination of the amount owed by Ficor on the date of dissolution. *Murray v. Rock*, 147 Colo. 561, 364 P.2d 393 (1961).

■ Because only the 11.012 acre parcel remained subject to the deed of trust given to secure the Berry & Stark obligation, that debt reduces the value of only the 11.012 acre parcel. The deed of trust required that land under it be released in quantities proportionate to the amount of principal paid regardless of any difference in the actual value of the various portions of the land. Thus, the amounts determined by the trial court on remand to be appropriate deductions in arriving at net value must be uniformly allocated to the 7.619 acres and the 3.393 acres (the 2.951 acre parcel plus the .442 acre parcel) which comprised the 11.012 acre parcel.

The extent of liability cannot be determined without a computation of the value of the 7.619 acre parcel. Because there is no finding of the market value of the 7.619 acre parcel, and because no value can be ascertained from the record, the matter must be remanded for the trial court to determine the market value of the 7.619 acre parcel at the time of the distribution of Ficor's assets. *Murray, supra.*

■ Thus, we find it necessary to set aside the judgment and remand for a new determination of liability, which liability shall be the lesser of either the net value of the assets distributed on March 1, 1972, or the amount of the deficiency on plaintiffs' deed of trust note after applying all payments and the amount realized at the foreclosure sale.

■ The defendants argue that the trial court erred by not deducting from the value of the 3.545 acres the interest on the $250,-000 note owed to the Security National Bank. We agree.

The evidence reveals that the loan was secured by a lien on the land, and that the lien also covered interest on the loan. Therefore, although the trial court was correct in deducting the $250,000 principal amount of the loan from the value of the land it erred in failing to deduct interest which had accrued but remained unpaid on the loan from November 19, 1971, to March 1, 1972, the date of the distribution of Fi-

cor's assets. On remand, the trial court is directed to reduce the judgment by the amount of interest which accrued on $250,-000 at 8½% from November 19, 1971, to March 1, 1972.

■ The defendants next assert that the court's finding of a value of $336,139 for the 3.545 acres is unsupported by the evidence. We do not agree.

The defendants argue that the value was determined at a time after the liquidation and distribution of the assets of Ficor, and after expenditures had been made to bring utilities to the property. Thus, they conclude that this value is higher than it would have been on March 1, 1972, the date the assets were distributed by Ficor. The determination of value is a question to be resolved by the trier of fact, and when the findings are supported by the record they will not be disturbed on review. *Underhill v. Detert,* 152 Colo. 223, 381 P.2d 265 (1963). Here, there was testimony that $336,139 would not be an unreasonable value for the land, without sewerlines, as of March 1, 1972. Therefore, we conclude that the trial court did not err in valuing the 3.545 acre parcel.

## VI. *Liability of Defendant Robertson*

■ Robertson contends that the trial court erred in making his liability joint and several with the other defendants. We disagree.

Robertson was neither a director nor an officer of Ficor, and his stockholder's interest in the corporation was five percent. He asserts that his liability, therefore, should be limited to the value of the assets he received or no more than five percent of the total liability. Under the judgment entered by the trial court, however, he is exposed to the same potential liability as the other defendants.

It is generally the corporate officers and directors, and not the shareholders, who are charged with the duty of exercising the powers of the corporation, and thus they are the ones who usually incur personal liability for breach of that duty. Section 7-5-101, C.R.S.1973 (1978 Cum.Supp.);

§ 7–5–115(2), C.R.S.1973. However, a stockholder may subject himself to similar liability if, because of his actions as an individual made possible by reason of his being a stockholder, the corporation acts improperly. *Liebhardt v. Wilson*, 38 Colo. 1, 88 P. 173 (1906). This liability, however, does not arise from mere knowledge of and acquiescence in a corporate wrongdoing by a stockholder, but must be accompanied by an overt exercise of power, authority, or influence, in directing, controlling, or managing the company, in this case, in its improper dissolution. *Liebhardt, supra.*

We conclude that Robertson did exercise such power, authority, and influence. The record reveals that Robertson initially advanced the ideas that led to dissolution, and that he suggested and arranged for the employment of counsel to advise the corporation relative to these matters. He participated in meetings at which the corporate dissolution and transfer of the properties were discussed, advanced his opinions, and gave his assent to the plan. He was therefore, in essence, a "prime mover" in causing the wrongful distribution of Ficor's assets. Therefore, we conclude that the trial court committed no error in making defendant Robertson's liability joint and several with the other defendants, and in not limiting his liability to the assets he personally received.

### VII. *Dismissal of the Defendants' Counterclaim*

The defendants assert that the trial court erred in applying the parol evidence rule to dismiss their counterclaim. We disagree.

The court found that the original purchase contract between plaintiffs and Ficor for the sale of the 14.557 acres was a complete integration of all prior promises or agreements. Although the defendants assert that they were fraudulently induced into the making of this contract, and therefore that the parol evidence rule should not apply, the court heard testimony as to the facts leading up to the making of the contract, and resolved this factual dispute in favor of the plaintiffs. This court will not disturb the findings of the trial court unless they are clearly erroneous. *Broncucia v. McGee*, 173 Colo. 22, 475 P.2d 336 (1970). Having made an independent analysis of the record, we conclude that there was sufficient evidence to support these findings by the trial court, and thus that the trial court committed no error in dismissing the counterclaim.

We have considered defendants' other claims, and we find them to be without merit.

The portion of the judgment dismissing the counterclaim is affirmed. That portion awarding a money judgment is set aside, and the cause is remanded with directions to:

1. Reconsider and clarify the determination of the amount of the obligation under the assumption agreement secured by the deed of trust on the 11.012 acre parcel.

2. Value the 7.619 acre parcel as of the date of Ficor's dissolution.

3. Re-compute the amount of the judgment to be entered against the defendants in accord with the views expressed herein.

RULAND and BERMAN, JJ., concur.