ASPHALT PAVING COMPANY,
Plaintiff-Appellant,

v.

UNITED STATES FIDELITY & GUAR-
ANTY COMPANY, a Maryland corpo-
ration, Defendant-Appellee,

and

H.L. Gracik Construction, Inc., a Colora-
do corporation, Defendant.

No. 81CA0072.

Colorado Court of Appeals,
Division I.

May 12, 1983.

Rehearing Denied June 9, 1983.

Certiorari Denied Oct. 31, 1983.

Bradley, Campbell & Carney, P.C., Victor F. Boog, Golden, for plaintiff-appellant.

Weller, Friedrich, Hickisch & Hazlitt, John R. Hickisch, Andrew J. Friedrich, Denver, for defendant-appellee.

STERNBERG, Judge.

Asphalt Paving Company (APC) appeals the amount of damages awarded to it on its claim against United States Fidelity & Guaranty Company (USF & G) under a performance bond. We reverse in part and remand for additional findings.

APC was awarded a contract by the Colorado Department of Highways to construct a three-mile segment of highway. APC awarded a subcontract to H.L. Gracik Construction, Inc., for certain ground preparation and finishing work. USF & G wrote a performance bond on the Gracik subcontract.

The subcontract provided that if Gracik defaulted, APC could do Gracik's work and charge the cost to Gracik. Additionally APC could collect liquidated damages to reimburse it for any liquidated damages charged by the state to APC as a result of Gracik's delay. Gracik further agreed to hold APC "harmless from all loss, cost or expense resulting either directly or indirectly" from the failure of Gracik to carry out the provisions of the subcontract. The prime contract was to be completed within 180 working days, and, according to a project schedule, Gracik had 135 working days to complete its work. According to the testimony of an officer of APC, there was an understanding with Gracik that its performance would be completed sooner than the 135 days allotted.

In mid-December, after 106 working days, the project was shut down for the winter. In February, when Gracik did not respond to APC's requests to resume work, APC declared Gracik in default and notified Gracik and USF & G of its intention to complete the contract using its own labor

and equipment. The entire project was completed one day late, although it took more than the allotted 135 days to complete Gracik's portion of the work. APC submitted invoices to USF & G for material and equipment charges incurred to complete the project but USF & G refused to pay.

APC sued USF & G on the bond, seeking its direct labor costs; increased labor costs allegedly caused by the delay; indirect payroll expenses such as insurance and taxes, overhead, material, and equipment costs; profit on its cost to complete; and interest on both the invoices submitted to USF & G, and on funds withheld from it by the Department of Highways as a result of claims filed against Gracik. The trial court awarded only a portion of these amounts.

APC appeals, alleging error in the amount awarded for equipment expenses, and in the court's failure to award any damages for increased labor costs, indirect payroll expenses, overhead, and interest.

## I. *Equipment Expenses*

APC owned nearly all of the equipment it used to complete Gracik's work. The equipment expenses claimed by APC were computed by using rental rates compiled by the Department of Highways. These rates were based on ownership, maintenance, and repair costs, with ownership costs figured as a percentage of the acquisition costs of new equipment. At trial, USF & G contested these figures as not being a reasonable reflection of APC's costs because APC owned and had fully depreciated most of the equipment. USF & G did not, however, submit substitute figures.

The trial court found the method used by APC to compute its equipment expenses was not a reflection of its cost to complete the project, and awarded approximately two-thirds of the amount APC claimed. The amount is purportedly based on figures submitted by APC, which are not a part of the trial court's record.

■ USF & G's obligation on the bond was to hold APC harmless for all cost and expense caused by Gracik's default. Because APC did not rent the equipment and did not claim that it would have rented its equipment to others at Department of Highway rates had it not been in use on this job, we agree with the trial court's conclusion that the Department of Highway's figures did not reflect APC's equipment costs for the purposes of awarding damages in a contract case. *See L.L. Hall Construction Co. v. United States,* 379 F.2d 559 (Ct.Cl.1966). There being support in the record for the trial court's conclusion in this regard, it is binding on review.

■ The document relied on by the trial court in its damage award was not admitted into evidence and thus cannot support the award of damages. Where, as here, a trial court's findings of fact do not enable a reviewing court to determine the basis for an award of damages, a remand for more detailed findings of fact is appropriate. *Murray v. Rock,* 147 Colo. 561, 364 P.2d 393 (1961).

■ An evidentiary foundation for an award of damages did exist: The record reveals that the rates upon which APC would normally have based its bid for these items were available and are a reasonable estimate of APC's cost to complete the job. Accordingly, this part of the judgment is remanded for supplemental findings on the reasonable charge for the equipment APC used to complete Gracik's performance.

## II. *Increased Labor Costs*

■ The trial court awarded damages to compensate APC for the wages it paid its own labor force to complete Gracik's work. In addition to this amount, APC claimed damages for a wage increase that became effective before the project was completed, alleging it would have completed the project before the increase became effective had Gracik performed according to the schedule. APC asserts the trial court erred in not awarding damages for this amount. We disagree with this contention.

APC argued that it should have been compensated for the wage increase because it was an expense caused by Gracik's default, and as support for this contention cites *Grow Construction Co. v. State,* 56 App.Div. 95, 391 N.Y.S.2d 726 (1977), and *L.L. Hall v. United States, supra.* Those

cases would support APC's claim if the trial court had found that Gracik's delay was unjustified or that it unreasonably interfered with timely performance. However, there was no evidence that Gracik's falling behind schedule was unjustified or that APC would otherwise have completed the project prior to the scheduled wage increases. APC did claim that it had to redo much of Gracik's work because it was not done according to specifications, but it was unable to produce evidence that any of the work had been rejected. In the absence of evidence that Gracik's default caused this expense, the trial court properly denied this claim.

### III. *Indirect Payroll Expenses*

■ The trial court did not state a reason for rejecting APC's claim for the payroll taxes, insurance, payroll processing expenses, and other costs associated with the labor it supplied to complete Gracik's work. The parties disputed the appropriate percentage of direct payroll expenses on which to compute such costs, but there was no dispute that this expense was a "cost or expense" incurred by APC to complete Gracik's performance. Based on the terms of the contract, we conclude as a matter of law that Gracik was liable for these expenses. *See Connell v. Sun Oil Co.,* 42 Colo.App. 311, 596 P.2d 1215 (1979). We remand the case for the trial court to determine whether the 35% figure submitted by APC, the 23% figure submitted by USF & G, or some other appropriate amount, and *to make findings and to enter judgment accordingly.*

### IV. *Overhead and Administrative Expenses*

■ The trial court rejected APC's claim for administrative expenses, finding that there was no evidence there were other projects on which the people involved would have worked, nor evidence that these employees' salaries would not otherwise have been paid, and because APC's bid to and payment from the state included overhead costs for the entire project.

Gracik, and its surety, USF & G, were liable for all costs caused by the default.

The trial court found as a matter of fact that the default did not cause APC to incur overhead and administrative expenses it would not otherwise have incurred. Being supported by the evidence, this finding is binding on review. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

### V. *Interest*

#### A.

■ Finding the amount USF & G owed to APC under its bond was unliquidated, the trial court did not award pre-judgment interest on APC's claims under the bond. We agree with APC that this was error.

Under § 5–12–102(2), C.R.S.1973 (1982 Cum.Supp.), "creditors shall be allowed to receive interest at the rate of eight percent per annum ... for all moneys after they become due on any bill, bond, promissory note, or *other instrument in writing* ...." The amount became due on the bond when the bills for costs were submitted to USF & G. *Key Savings & Loan Ass'n v. Travelers Indemnity Co.,* 32 Colo.App. 358, 513 P.2d 737 (1973). A dispute as to the amount due does not remove the claim from this section of the statute. *Western Oil Fields, Inc. v. Coit,* 29 Colo.App. 567, 487 P.2d 562 (1971). We hold, therefore, that APC should receive interest on the amount found to be due from the time the invoices were submitted to USF & G.

#### B.

■ We agree, however, with the trial court's denial of APC's claim for interest on the funds withheld by the state as a result of Gracik's default.

■ Interest is a creature of statute. Absent contractual provisions to the contrary, it is recoverable only in cases enumerated in the statute. *Weaver v. First National Bank,* 138 Colo. 83, 330 P.2d 142 (1958). APC claims this amount as a form of damages for wrongful conduct. Such a theory was applied in *Bankers Trust Co. v. International Trust Co.,* 108 Colo. 15, 113 P.2d 656 (1941) and *Davis Cattle Co. v. Great Western Sugar Co.,* 544 F.2d 436 (10th Cir.1976), which relied on Colorado law, as part of a restitutionary remedy for

tortious taking or detention of money or property. Under this theory, upon which APC relies, the amount of interest is measured by the benefit to the wrongdoer, rather than the loss to the plaintiff, to restore the benefit gained by the wrongdoer as a result of the detention. However, APC's theory does not apply here because USF & G did not benefit from APC's loss of funds. Thus, the trial court was correct in denying interest on the funds withheld by the state.

The denial of increased labor costs, overhead and administrative expenses, and interest on the funds withheld by the state is affirmed. The denial of indirect payroll expenses and pre-judgment interest is reversed. The cause is remanded to the trial court with directions that it determine from the record, or in its discretion, after a hearing, the amount of damages for APC's equipment costs and the proper measure for indirect payroll expenses, and that it enter judgment for those amounts and for pre-judgment interest at the rate of eight percent per annum on the amount found to have been due under the bond.

BERMAN and COYTE,* JJ., concur.