JOAN M. QUIGLEY, as Administratrix of the Estate of CHARLES J. QUIGLEY, Deceased, Appellant-Respondent, v. STATE OF NEW YORK, Respondent-Appellant. (Claim No. 30521.)

JOAN M. QUIGLEY, Appellant-Respondent, v. STATE OF NEW YORK, Respondent-Appellant. (Claim No. 30522.)

Third Department, December 30, 1952.

*John W. Tabner* and *Nathan M. Medwin* for appellant-respondent.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General,* and *John R. Davison* of counsel), for respondent-appellant.

BREWSTER, J. Claimant and her husband were en route by automobile from New Jersey to Pittsfield, Massachusetts, the husband driving, on a State highway, Route No. 44, in Dutchess County, when they experienced the accident in question for which claimant has been awarded damages against the State for the death of her husband and for her personal injuries. The accident occurred on December 23, 1949, at about 8:00 P.M. as they were proceeding easterly on a down grade and on an 881 feet radius curve to their right, about one and one-third miles westerly of Amenia, and at a place known as Fish Hatchery Hill, when their car went to its left into the other lane and met head on in a collision with the automobile of Dr. Liao coming from the east, killing claimant's husband and injuring her.

At the place where claimant's car made its erratic movement to its left and collided with the other car, there was a patch of ice or place where it was icy, which rendered the pavement slippery. Its nature and composition is not otherwise shown except as to its extent, and this was: from the rear position of claimant's car at the point of collision, it extended twelve feet and seven inches westerly in that westbound lane, and "continued for another 15 or 20 feet" in the eastbound lane.

The direct evidence as to the cause and happenstance of the accident is brief, somewhat vague in the generality of its description and consists of the testimony of claimant and Dr. Liao, as follows: by claimant: — "We were traveling about 25 or 30 miles an hour,— we approached a curve, and from nowhere there was some ice because Mr. Quigley had trouble keeping the car on the road. * * * we started to skid and he tried to control it, and something from the left side kept pulling. We felt a jar and he completely lost control of the car"; and also that: "The collision was almost instantaneous after we got on the left hand-side": by Dr. Liao — "As I drove uphill ready to turn to my left a car came along and I saw the two headlights in front of me and in a very short time the collision was made. * * * On my side."

The only findings which have been made, other than those in the State's request to find, are contained in the opinion of the Trial Judge, written as to both claims. Therein he found

that there was no "satisfactory" proof of any artificial cause for the icy condition which was a factor in the accident. He rejected as inadequate and unproven the different theories as presented by claimant's evidence and found that the cause of the icy condition was "undetermined" and "therefore" that "it obviously cannot be charged to any particular act or neglect of the State."

There was evidence that, at the time in question, from the scene of the accident westerly to the top of the grade (some 1,100 feet westerly to where the State maintained a standard sign warning that the pavement was slippery when wet), and farther to the west, estimated as one-half mile from the accident, the pavement was free from ice. We agree that claimant's diverse and in some respects inconsistent evidence as to any artificial cause of the formation of the icy condition in question failed to establish that it was due to any particular act or neglect of the State. Various theories were advanced by claimant's witnesses, such as "seepage" from the embankment and rock cut on the *southerly* side of the road, the blocking of drainage in the ditch on that side, "seepage" from the lengthwise separation between the concrete panels, the elevated shoulder on the *northerly* side and the banking of the curve. There was no sufficient evidence that any of these speculated causes accounted for the icy condition in question in that any negligence of the State in the alignment and design of the highway and its appurtenances were responsible therefor. As to the matter of the lengthwise separation of the pavement panels, and the difference in their elevation, this was at a place westerly of where the car skidded on to its left side of the road, and claimant's vague testimony about *something pulling* to their left could as well have been the initial skid itself. Moreover, the elevated northerly panel, as described, would, if it had any play in the matter at all, have tended to retard the side skid to the left, instead of pulling it in that direction. The Trial Judge found that any such causal relation was "debatable" but still seems to have drawn an inference that it was a contributing factor, and as to that we disagree that any such inference may reasonably be drawn from the evidence.

Liability for claimant's damages has been cast upon the State because of the finding that the icy condition of the highway which was a cause of the accident was a "dangerous condition of which the State had, or should have had, knowledge" and which it failed to remedy or give adequate warning thereof. Some of the evidence relied upon to support this may readily

be dismissed as wholly illegitimate for any such purpose, viz.: the maintenance of the warning sign aforesaid and the prior accident which occurred three months *before the trial* and after the accident in question, not three months prior to the accident in question as is mistakenly noted in the opinion. The State's exercise of care in the erection of the warning sign is no evidence that it knew or should have known of this or of any particular place or area where the pavement might become slippery. It was meant, of course, to refer generally to the way ahead on the curves and down grade, including the scene of accident. The number, phraseology and location of such signs are largely a matter of judgment on the part of the highway authorities. Their use in warning of dangers which inevitably occur due to the vagaries of weather has its practical limitations and can only serve to warn generally in their nearby locality. We see no evidence of negligence as a proximate cause of the accident arising from the lack of warning signs. As to the hill and curves, claimant's car had successfully negotiated them at moderate speed. The only precipitating or contributing cause was the isolated patch of slipperyness on the pavement, insofar as the highway itself had to do therewith.

For any other evidence to support the findings for the awards of damages we must look to the testimony of the two deputy sheriffs, Dunbar and Adams, and the State Trooper, McGuire who came to the scene of the accident soon after it occurred. They testified that at various times prior to the accident they had observed water and/or ice on the pavement at and near where it took place. However, this was all in connection with and in reference to their properly rejected offers of explanation that water flowing, draining, seeping or overflowing from the embankment, rock-cut or ditch on the *south* side of the highway was the cause thereof. Their evidence furnished insufficient, if any, proof that the icy patch of pavement in question was a recurrent condition due to causes chargeable to the State's knowledge and subject to its elimination or control in the exercise of reasonable care. The icy patch which did the mischief is not shown to have been due to water coming on the pavement from the south side of the highway. Any possible bearing which the testimony of these witnesses could have upon a reoccurring dangerous highway condition subject to correction by reasonable care is nullified by the State's proof as to the weather conditions which prevailed on the day and at the time of the accident. As disclosed by the nearest official recording (at Poughkeepsie, twenty miles westerly) it had rained on this cold December

23d, nearly all day from 4:00 A.M. to 6:00 P.M. Total precipitation was 0.47 in addition to a trace of snowfall, with light sleet beginning at 3:27 P.M. and ending at 6:25 P.M. and light snow from 4:25 P.M. for an hour. Accompanying these conditions were freezing temperatures which began at 7:00 P.M. and continued until after the accident. McGuire testified that as he approached the scene of the accident from the west: "The highway, several sections of it were covered with ice, snow and slush." And Dunbar, who came from the east, from Amenia, three miles away, said it had been a rainy day with freezing temperatures and on his way to the accident he found ice on a hill and again 100 yards east of the collision. The uncontradicted proof of the weather conditions is sufficient to establish that such was the cause of the icy condition for which, as a factor in the accident, under all the facts and circumstances disclosed, the State's liability in negligence is not established.

The judgments should be reversed and the claims dismissed.

HEFFERNAN, J. (dissenting). I cannot agree with the view of the majority in this case. At about eight o'clock on December 23, 1949, Charles J. Quigley accompanied by his wife Joan was operating his automobile in an easterly direction on New York State highway 44 in Dutchess County. This highway consists of two concrete lanes each nine feet in width. As the car was rounding a curve at a point known as "Fish Hatchery Hill" the car started to skid, the driver lost control and the vehicle went to the left side of the highway and collided with a car moving in the opposite direction. As a result of the collision Mr. Quigley was fatally injured and his wife sustained serious personal injuries.

Claims against the State of New York were presented, one by claimant for personal injuries sustained by her and the other as administratrix of her deceased husband. The court below made an award in her favor in the sum of $28,123.90 in the death action and $10,680.40 for her personal injuries. The State has appealed from these judgments and the claimant has cross-appealed on the ground of inadequacy of the awards.

About one half mile west of the scene of the accident there is a sharp curve and a descending grade to the east and at a point about 700 feet west of the place where the collision occurred there is a heavy descending grade. Just west of the point of collision the road again curves and according to the testimony of an engineer formerly employed by the State this was a very sharp curve. The pavement is banked with ditches on either side and there is a concrete gutter on both the north and the south sides.

On a curve about 100 feet west of the scene of the accident there is a separation between the two slabs of concrete about three inches in width, the south slab having settled about one to one and one-half inches and this separation continued for a distance of seventy-two feet. A deputy sheriff of Dutchess County testified that this separation was about twenty feet west of the point of collision and the north slab was about one and one-half to two inches higher. He said he made measurements and found the separation to be four inches in width in one spot for a distance of about eight feet. This witness had lived in that locality for forty-one years and had been accustomed to travel over this highway several times weekly. He said this separation between the concrete slabs had existed for a period of at least two years. His testimony in that respect was corroborated by another deputy sheriff of Dutchess County. There was considerable ice on the highway where the cars collided. At this point there was also a sharp blind curve and a descending grade and those factors taken in connection with the separation between the concrete pavement justified a finding of negligence on the part of the State. Unquestionably this highway was defectively maintained at the point of collision and the State is liable for what occurred (*Cook* v. *State of New York,* 301 N. Y. 780).

There is no claim here that either the decedent or his wife was guilty of contributory negligence. In my opinion the Court of Claims properly imposed liability on the State. I am convinced, however, that the damages awarded in each case are wholly inadequate.

The judgments should be modified by a substantial increase in the amounts awarded in each case and as so modified affirmed, with costs to claimant.

Foster, P. J., Bergan and Coon, JJ., concur with Brewster, J.; Heffernan, J., dissents, in a memorandum.

Judgments reversed, on the law and facts, and claims dismissed, without costs, all findings of the court below inconsistent with the opinion are reversed and new findings made in accordance herewith. Settle order on notice.