■ FILIPPINA BRADSHAW, Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 35660.) — REYNOLDS, J. Appeal from an amended judgment of the Court of Claims awarding respondent $25,000, without interest. Respondent, on November 30, 1956, while a patient at Creedmoor State Hospital, became involved in a verbal altercation with another patient. An attendant interceded in the argument and, in doing so, pushed appellant to the floor with such force that she was unable to get up. This attendant then left, and, after two patients had assisted her to a chair, two other attendants attempted to force her to walk and finally, when she proved unable to do so, pulled her down two flights of steps to the first floor and, when she refused to go on to the dining room, just left her. Thereafter, a nurse and a man came by and placed respondent in a bed on the first floor. It was not until two days later that claimant was first observed by a doctor, and three days after the incident when an X ray was finally taken, and five days thereafter before a reading of the X ray was found to reveal a fractured femur, the bone having been shattered and the neck actually severed in two parts, with an overriding of the fragments and a marked shortening. On December 6, 1956 Dr. Young, an orthopedic consultant, was called, and on December 10 he inserted a Smith-Peterson nail and applied a Wilkie boot. It is conceded that he performed this operation without the availability of a portable X-ray machine (the hospital having none) which the medical testimony indicated was "an absolute necessity" during this type of operation. On December 11 an X ray revealed that the fragments were still rotating and that the nail had been driven through the head of the femur and acetabulum into the pelvic cavity. On December 12 the nail was removed and thereafter respondent suffered a series of medical complications including a prolonged period of drainage, "Osteomyelitis with involvement of the femoral head and neck and acetabulum", "staphylococcus albus from osteo", a skin condition, acute appendicitis, and removal of a diseased kidney. Then in 1961, after her discharge from Creedmoor, respondent fell and fractured the lower third of the femoral shaft. It was discovered that respondent had a three-inch shortening of the leg and a nonunion which could not be corrected because of an osteoporotic bone condition stemming from the osteomyelitis. Finally some union was established, "but not sufficient for weight bearing." In December, 1963 respondent recovered a judgment against Dr. Young for $26,410 and in February, 1965 the judgment here appealed against the State. The State contends that in view of respondent's judgment against Dr. Young the recovery here on the grounds advanced by the Court of Claims amounts to a double satisfaction for the same injury and that, therefore, the award is necessarily excessive. Respondent cross-appeals from that portion of the judgment dismissing her claim that the State was negligent in contributing to or causing the accident. We are constrained to agree with respondent's contention. Respondent's testimony established a prima facie case that the State's negligence contributed to or caused the accident, and we find no basis here on which the court below could disregard such testimony even though respondent was an interested witness (*Hull* v. *Littauer*, 162 N. Y. 569; *Lomer* v. *Meeker*, 25 N. Y. 361). In addition, the State's failure to call the attendants allegedly involved supports an inference that their testimony would not have been favorable to the State (*Galbraith* v. *Busch*, 267 N. Y. 230). Accordingly,

based on the entire record we find that negligence attributable to the State was the cause of the accident (CPLR 5501). Furthermore, the judgment obtained against Dr. Young precludes recovery "only for those damages for which satisfaction has   *   *   *   been made by the physician", i.e., not "for those damages which did not follow upon and flow from the physician's negligence." (*Matter of Parchefsky* v. *Kroll Bros.*, 267 N. Y. 410, 414.)   Here, in addition to the initial negligence of the State in causing the accident, we find negligence of the State, apart from that of Dr. Young, clearly established during the six-day period prior to the commencement of Dr. Young's treatment, especially in compelling respondent to descend two flights of stairs immediately after her fall, and during the six-month period following Dr. Young's operation, especially in failing to properly treat the staphylococcus infection which resulted in the kidney removal and also resulted in, or at least exacerbated, the osteomyelitis, which in turn caused the failure to unite and the nonunion with insufficient weight bearing.   However, despite the fact that we have found additional negligence beyond that found by the Court of Claims, in our view, the award made by the court properly reflects respondent's damages, and accordingly we affirm the judgment as to amount.   Since we consider the over-all damage to be $51,410 the same result would be arrived at if we found said damages to be $51,410 and deducted therefrom the $26,410 awarded in the malpractice action (cf. *Matter of Parchefsky, supra*).   Judgment modified, on the law and the facts, by reversing so much of the judgment as dismissed respondent's first claim, and granting respondent judgment on that claim, and, as so modified, affirmed, with costs.   Gibson, P. J., Herlihy, Aulisi and Hamm, JJ., concur.