■ HELEN E. KEYSER, Respondent, v. WILLIAM E. O'BRIEN, Doing Business as WILLIAM E. O'BRIEN FUNERAL HOME, Appellant.— Per Curiam. Appeal from a judgment of the Supreme Court, Albany County, entered on a verdict in favor of the respondent in a negligence action and from an order of the same court denying appellant's motions to set aside the verdict. This action was brought to recover damages for injuries sustained by respondent in a fall on a sidewalk abutting appellant's building at 298 Lark Street in the City of Albany on Saturday, January 21, 1961 at 7:20 in the morning. Respondent at the time of her fall was walking northerly on Lark Street on the easterly sidewalk in a narrow path, presumably created by pedestrians, about 12 to 14 inches wide with snow piled on either side thereof. There was no testimony that the sidewalk was shoveled. This path according to respondent, "run right in the middle of the pavement [sidewalk] in that concrete slab." The concrete slab referred to measured 5 feet long and 16 inches wide and was in front of the indented entrance to appellant's premises and east of the line of the steps leading to all of the buildings near the scene of the fall. Six years prior to the accident the City of Albany had blacktopped the area in front of the premises in question under a proper permit and had blacktopped up to and around the concrete slab. An engineer testified that a joint was formed between the blacktop and the concrete slab. Due to time, wear and the elements, this joint had become slightly widened. The width of the joint at the southerly end was five-eights of an inch and it was a quarter of an inch deep. The width of the joint varied towards the north, at the widest point for a few inches reaching an inch and three-quarters in width, but it was not deeper than one quarter of an inch at any place. This slight depression and separation between the concrete and the blacktop where it is alleged water collected and froze is the core of respondent's claim of a dangerous condition and negligence. The theory of the respondent is that this joint between the blacktop and the concrete slab at the stairway created improper drainage for the precipitation falling from projections on the building and for seepage which ran across this concrete slab and into this joint and that the respondent slipped on ice which had formed as a result thereof in the joint. It is then urged that since this construction was for the alleged special use and benefit of the appellant it comes within the rule which has been applied to coal

holes, grates, vault covers, etc., installed in the sidewalk for the use of an abutting owner. Although this would be a substantial extension of these cases we do not pass upon this facet of the case, because there was no exception to the court's charge in regard thereto. The depth of the snow at the time of the accident was at least 14.2 inches as the weather reports show and it is conceded that the abutting owner was under no duty to persons using such sidewalk to remove from it any ice or snow that had normally accumulated there through the act of the elements or weather. The respondent testified that the weather conditions when she was walking home this morning were: " Well, it was snowing, and it was very, very bitter cold, and it was ice — a lot of ice under the snow that you had to be very careful of when you stepped." " It was so cold that you had to walk fast in order to keep warm"; and at the time of the fall, " I couldn't move my — my hands were in the snow on top of the ice." " It was all through Lark Street very bad." And when asked whether the snow on the left of the path was frozen hard or was soft, " No, it was very hard because it was bitter cold that morning." " Q. That was on the block all the way down Lark Street? A. Yes, sir. Q. When you came by the night before there was light snow on the piles of hard snow? A. Yes. Q. And do you recall what the conditions were with regard to piled snow? A. It was all through Lark St. very bad. Q. * * * as far as conditions in front of the O'Brien Funeral Home, the condition was the same Friday night as it was on Saturday morning at 7 o'clock, 7:15 when you fell; is that right? A. Yes. Q. There was no change? A. No change." It is undisputed that on the morning of the accident and for several days before, the prevailing weather conditions were such as to render the sidewalks in the city to be covered with freshly fallen snow on top of accumulated hard packed snow and ice. Generally in Albany for more than a week prior to the date of the accident there was snow and ice on the ground to a depth of six inches. Albany had had the coldest January since 1945; the second half of the month was one of the coldest 15 days, if not the coldest, of record. The weather report in evidence further shows that on the Thursday preceding the accident the maximum temperature was 11 degrees and the minimum 1 degree above zero. On Friday, the day before the accident, the maximum temperature was 5 degrees above zero and the minimum zero. Friday night the temperature went down to 14 degrees below zero, and at the time of the accident, according to respondent, " it was very, very bitter cold". On Thursday the snow on the ground was 6.1 inches. On Friday the snow on the ground was 14.2 inches following a heavy snow fall. There were 20 minutes of sunlight on Thursday and none on Friday. There was testimony on behalf of respondent over appellant's objection that there was dripping from a narrow inverted " V " over the entranceway of 298 Lark Street earlier in the week and then an answer to a leading question, over appellant's objection, that there was also seepage at this time. There was further testimony by the same witness that five hours after the accident, Saturday noon, there was dripping and seepage in front of the premises. This testimony over appellant's objection was prejudicial and constituted reversible error because the conditions were obviously not the same and described a condition existing after the accident. (Fifteen degree temperature with sun at noon contrasted with about fourteen below zero temperature at the time of the accident five hours earlier.) Judgment and order reversed, on the law and the facts, and a new trial ordered, with costs to abide the event. Gibson, P. J., Herlihy, Aulisi and Staley, Jr., JJ., concur in memorandum *per curiam;* Reynolds, J., concurs in a separate memorandum. Reynolds, J. (Concurring). While I agree with the result reached, I have great doubt that any actionable negligence was shown here on the part of the appellant or that any causal relationship was established between the alleged dripping of water from

appellant's building and the existence of ice on the sidewalk. To make out a prima facie case there must be a factual showing of conditions from which the negligence of the appellant and the causation of the accident can be reasonably inferred. A mere resort to the photographs instantly shows that the sidewalk in front of appellant's premises was in excellent condition and was in the best condition of any sidewalk in the block. It seems obvious that any water which was cast upon the sidewalk was precipitation which struck the front of the building and found its way to the sidewalk. This is true of any building in the city and, of course, cannot be used as a basis for actionable negligence; rather the evidence indicates that the sole cause of the accident was the result of a general massive icy condition for which appellant was in no way responsible (*Taylor* v. *City of Yonkers*, 105 N. Y. 202; *White* v. *State of New York*, 11 A D 2d 871; *Callwood* v. *Consolidated Edison Co. of N. Y.*, 286 App. Div. 838; *McCarthy* v. *Gallo*, 283 App. Div. 835; *Quigley* v. *State of New York*, 281 App. Div. 185; cf. *Wragge* v. *Asphalt Constr. Co.*, 17 N Y 2d 313). Moreover, the jury was allowed to speculate that some of the ice on the sidewalk resulted from drippings of precipitation from an inverted "V" over the entranceway, having dropped from projections above, but again a resort to the photographs shows that this inverted "V" is considerably indented and any drippings from the projection above, or even from the roof, would fall not on this inverted "V" but on the properly pitched sidewalk whence it would run to the street. The drippings if any from the inverted "V" would be a result of precipitation falling against the front of the building. Finally, respondent's case must stand or fall on the minimal and trivial depression and separation between the concrete and the blacktop which would probably hold about a half-cup of water. Respondent's testimony that she could identify the particular spot where she fell as on this trivial depression, one quarter of an inch deep and at its widest point one and three-quarters inches, when there were over 14 inches of hard-packed snow and ice covering the whole general area is incredible. As the court said in *Solomon* v. *Somerman* (18 A D 2d 696, 697, mot. for lv. to app. den. 13 N Y 2d 598) where the complaint was dismissed: "There was no evidence that the individual defendants created a condition on the sidewalk more dangerous or hazardous than the existing condition already created by the natural accumulation of snow and ice". To be actionable a defect in a sidewalk must be of such a nature that a reasonably prudent person would foresee the possibility of injury to a user. The alleged defect is not of such a character as to impose liability (cf. *Fox* v. *Brown*, 15 N Y 2d 597; *Lynch* v. *City of Beacon*, 295 N. Y. 872; *Clemmons* v. *Cominskey*, 1 A D 2d 933, affd. 2 N Y 2d 958). Upon a retrial the attention of the trial court in connection with the charge as to proximate cause is directed to Restatement of the Law of Torts, vol. 2, 2d, § 431; 1 NY PJI 148, PJI 2:70; see *Dunham* v. *Village of Canisteo*, 303 N. Y. 498, 504; *Rugg* v. *State of New York*, 284 App. Div. 179; *Klein* v. *Herlim Realty Corp.*, 184 Misc. 852, affd. 269 App. Div. 934.