■ Joseph C. Valentino, Jr., as Administrator of the Estate of Lorraine B. Valentino, Deceased, Appellant, v State of New York, Respondent. (Claim No. 57242.)—Appeal from a judgment in favor of defendant, entered September 7, 1976, upon a decision of the Court of Claims which dismissed the claim on the merits. Lorraine B. Valentino was killed when an automobile driven by her sister-in-law, Josephine Valentino, skidded out of control while traversing a railroad overpass, struck some guardrails, and continued down an embankment. The accident occurred on Route 144 at approximately 8:40 A.M. on the morning of November 15, 1976. Claimant

contends that the accident was caused by the State's failure to salt or sand the overpass, alleging that the surface of the overpass was covered with ice at the time of the accident. The court found that the evidence was insufficient to hold the State liable for negligence "either as to actual or constructive notice concerning the condition of the overpass in question, nor as to the running of a reasonable time within which the State had to act to correct the situation". The New York State Department of Transportation had the duty and obligation to keep its highways in a safe condition, and the duty to properly maintain Route 144, including the overpass where the accident occurred. The State had a highway garage located about one and a half to two miles north of the overpass where salt was located as well as highway equipment. On the morning of the accident, three crew members were at the garage, Ciccarelli, the foreman, Warner and Marlowe. At the trial, portions of Ciccarelli's examination before trial were introduced in which he stated that about 7:00 A.M. on the morning of the accident he was informed that it was raining, and there was a freezing condition on a bridge on Route 396, the route from Voorheesville, New York, and that at 7:37 A.M. he received a call from a highway dispatcher that the State Police had advised that Route 9W was slippery, and requested that the highway be salted. The crew left the garage at about 8:00 A.M. in the truck loaded with salt driving south on Route 144 to Ravena to get a salt spreader. The dump truck had shovels that could be used to spread salt. A portion of Warner's examination before trial was also introduced in which he stated that the crew drove over the bridge where the accident happened at about 8:40 A.M. and that the bridge was wet but not slippery. The court observed that the crew must have driven over the bridge before the accident happened. Josephine Valentino, the operator of the accident automobile, testified that she and the decedent left Ravena about 8:25 A.M. on the day of the accident; that she drove north on Route 144 towards Albany; that it was raining, and when she came to the overpass it was icy or slippery; that her automobile skidded to the left, steered to the right, crashed into the guardrails and went down the embankment. Claimant presented evidence by three automobile operators who drove over the bridge between 8:10 and 8:30 A.M. on the morning of the accident that they all skidded on the bridge, and that it was slippery. One witness, Ferriero, also testified that he observed that the bridge was covered with ice. The court found that "there is evidence of wet weather—icy—road condition on the overpass existing for a period of upwards of thirty minutes". The real issue, therefore, is whether the State could be charged with actual or constructive notice of the condition of the overpass, and did nothing to alleviate it. The court relied on the testimony of Warner to the effect that when the truck drove over the bridge it was wet but not slippery, and, in addition, Ciccarelli, the foreman, gave no testimony as to the condition of the bridge. The court further found that "it appears that at various times before 8:00 A.M. some surfaces (both bridge and highway) were freezing while others were wet and that with respect to the instant overpass, the freezing appears to have occurred after 8:00 A.M., and after the State's truck drove over". It is well settled that mere proof that an accident was caused by an automobile skidding on an icy State highway does not alone establish negligence on the part of the State. "In cases such as this, the pertinent question is not whether snow or ice has been permitted to accumulate on the highway, but whether the State has exercised reasonable diligence to cure the situation (*Cohen v City of New York*, 204 NY 424; *La Tournerie v State of New York*, 1 AD2d 734; *Quigley v State of New York*, 281 App Div 185, affd 308 NY 846)." (*Tromblee v State of New*

*York,* 52 AD2d 666, 667.) To hold the State liable there must be a clear demonstration that, with knowledge of the existence of a dangerous condition, the State failed to remedy it. The uncontradicted testimony of Warner concerning the condition of the overpass at the time the crew drove over it that there was no ice on the bridge at that time, and the court's conclusion to the same effect was not unreasonable or against the weight of the evidence. The claimant has not demonstrated that the State exercised anything but reasonable diligence in the activities of the highway crew on the morning of the accident. The record sustains the findings of the Court of Claims that the State had neither actual or constructive notice of the condition of the overpass prior to the accident nor as to the running of a reasonable time within which the State had to act to correct the situation, and such findings should be affirmed. Claimant also contends that the court committed reversible error by receiving into evidence those portions of a motor accident hearing transcript regarding the accident containing written conclusions of the hearing officer that the cause of the accident was the speed of the accident automobile which was unreasonable under the existing weather conditions. Even though the admission of the report may have been error, it appears clear that it did not affect the decision. Even if the operator was found free from negligence and not a cause of the accident, the outcome would not be influenced. The decision was not based on any theory that the operator of the car was the sole cause or on any contributory negligence theory. Rather, the reason for the dismissal of the claims was the finding of lack of actual or constructive notice of the icy condition and failure to show that the State had a reasonable time to correct it. The exclusion of the allegedly improper evidence would not have changed the outcome and should not, therefore, be the basis for reversal *(Finch v Benninger,* 13 AD2d 568). Claimant requested that the court apply an inference that the testimony of the third member of the crew, Marlowe, would have been unfavorable to the State, and that the court's failure to apply a negative inference by reason of his nonappearance is ground for reversal. The general rule is that an unfavorable inference may arise when a party fails to produce a witness whom he would naturally be expected to call and who is within his control *(Bradshaw v State of New York,* 24 AD2d 930).* However, there is no evidence in the record concerning the employment of Marlowe by the State at the time of the trial. Although an adverse influence will arise upon the failure to call as a witness an employee, no such inference arises from the failure to call a former employee. Since there has been no proof that Marlowe was an employee of the State at the time of trial, no unfavorable inference should arise by the failure to call him *(Lopez v Burns Int. Detective Agency,* 48 AD2d 645; *Vispetto v Bassuk,* 41 AD2d 958). Judgment affirmed, without costs. Sweeney, J. P., Staley, Jr., and Larkin, JJ., concur; Kane and Mikoll, JJ., dissent and vote to reverse in the following memorandum by Mikoll, J. Mikoll, J. (dissenting). We respectfully dissent. The court rested its decision upon the conclusion that the testimony of State employee, Warner, as to the condition of the bridge surface was uncontradicted. We find this conclusion to be against the weight of the credible evidence. Warner originally testified at the examination before trial that the salt truck and crew left the Selkirk barn between 8:15 and 8:30 A.M. He later stated at that examination that the truck passed over the bridge at 8:40 A.M. This latter estimate the court rightly found to be incorrect. The court then concluded the truck drove over the bridge shortly after 8:00 A.M. relying on the testimony of the salt crew foreman, Ciccarelli, given at an examination before trial and read into the trial record. How-

ever, the weight of the credible evidence places the salt truck and crew on the bridge at approximately 8:15 to 8:20 A.M. Foreman Ciccarelli's testimony supports this conclusion since he testified that the front-end loader was not started until about five minutes after he received the radio message logged at 7:37 A.M. concerning freezing conditions and that it took another half hour to then load the dump truck with salt. They then left the Selkirk barn for Ravena. Thus, Ciccarelli's testimony places the truck on the bridge, some one to one and a half miles from the barn at about 8:15 to 8:20 A.M. This time estimate is consistent with Warner's original testimony, Ciccarelli's testimony and the documentary evidence (log report). Warner's testimony, that the bridge was wet but not slippery when the salt truck passed over the bridge, is contradicted by the testimony of Kirk Trombley, a motorist, who drove over the bridge at 8:10 A.M. TROMBLEY SAID THAT HIS AUTO WENT INTO A SLIDE WHEN HE WAS ABOUT HALFWAY ACROSS THE BRIDGE. PETER FERRIERO, ANOTHER MOTORIST, TESTIFIED THAT HE DROVE OVER THE BRIDGE AT 8:20 A.M. and that he observed the surface to be a glare of ice. Significantly Warner could not recall if the bridge surface was freezing and never expressly stated that the bridge was not icy. Thus, there was substantial credible evidence that the bridge surface was slippery and freezing at the time the salt truck drove over it. The trial court's contrary finding is against the weight of the evidence. Reversal of the judgment is therefore warranted on these grounds (*Grow Constr. Co. v State of New York*, 56 AD2d 95, 99; *Shipman v Words of Power Missionary Enterprises*, 54 AD2d 1052; *Victor Catering Co. v Nasca*, 8 AD2d 5). The State failed to produce any evidence on the issue of the condition of the bridge surface from its employees, foreman, Ciccarelli and laborer, Marlowe. These men had knowledge of the facts in dispute and Ciccarelli, at least, was still under the control of the State at the time of the trial. Counsel for the State, at the beginning of the trial explicitly stated to the court that he had a problem with a witness, Ciccarelli, a maintenance foreman for the State who was confined to a hospital. The State failed to call him despite the fact that the court was willing to adjourn to the hospital to convenience the State. The general rule is that where an adversary party withholds evidence in his control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits (*Noce v Kaufman*, 2 NY2d 347, 353; *Bradshaw v State of New York*, 24 AD2d 930; *People v Moore*, 17 AD2d 57; *Milliman v Rochester Ry. Co.*, 3 App Div 109; Richardson, Evidence, [Prince, 10th ed], § 92, pp 66-68). The State's failure to produce Ciccarelli's testimony was extremely significant. He had charge of the salt crew. In view of the claimant's evidence establishing the slippery and icy condition of the bridge and the prior communication Ciccarelli received that bridges were freezing, the foreman had a duty to inspect the bridge surface at the time the truck drove over it prior to the Langlois accident and the Valentino accident. The trial court specifically referred to the importance of Mr. Ciccarelli's testimony as to the condition of the road. In view of the court's emphasis on the absence of this testimony from Ciccarelli it is obvious that the court rejected claimant's request to apply the rule to the failure of the State to produce evidence on the issue of notice from an employee in its control. This was error under the facts of this case (*Bradshaw v State of New York, supra*). On a new trial it would be improper to receive into evidence the motor accident hearing transcript containing the conclusions of the hearing officer as to the cause of the accident. The judgment should be reversed and a new trial should be ordered.