■ In the Matter of CYNTHIA ALLEN, Respondent, v MICHAEL BLACK, Appellant. [712 NYS2d 487] —Order, Family Court, New York County (Richard Ross, J.), entered on or about September 4, 1998, which granted the mother's petition for an order of protection and directed respondent father to isolate himself from the mother, the child (except for court-ordered visits) and their home for a period of three years and to complete a Victims' Services Agency domestic violence program, unanimously reversed, on the facts, without costs, and the petition dismissed.

The petition, filed on July 30, 1998, included the following substantive allegation: "On or about July 22, 1998, outside in the street, Manhattan, THE RESPONDENT THREW BOTTLES, ROCKS & CANS AT THE PETITIONER AS SHE WAS WALKING WITH HER DAUGHTER. THE RESPONDENT SLAPPED THE PETITIONER IN THE

FACE & PUNCHED HER IN THE STOMACH. THE RESPONDENT'S MOTHER ALSO THREW BOTTLES AT THE PETITIONER. THE PETITIONER & HER DAUGHTER MANAGED TO GET AWAY BY RUNNING TO THE TRAIN."

A hearing was held on September 4, 1998, at which testimony was taken from the parties herein and respondent's mother. According to petitioner, on July 22 she and her mother had just picked up her 7-year old child at the Jewish Board for Family and Children's Services, on Lafayette Street, where the child had completed a court-ordered visit with her father. They left the building approximately 15 minutes before respondent, and were walking very slowly toward the subway station at Canal Street and Broadway when respondent and his mother caught up, at about 2:00 P.M., and began hurling rocks, bottles and cans at them, while calling petitioner obscene names. Respondent then confronted petitioner, slapping her face and punching her in the stomach. After the attack, the three continued moving toward the subway station. Petitioner testified that several bystanders, including "one or two" court officers, witnessed this incident on the street, but none came forward to help. Thereafter, respondent entered the passenger side of a car and pulled a handgun from the glove compartment. Petitioner stopped to see what he was doing, and when she saw the gun and heard him threaten to use it, she "panicked" and "froze." When she regained her wits, she fled with her mother and the child toward the Canal Street subway station, through the midday traffic, respondent hotly pursuing within "inches" of them, waving the gun in the air throughout. Even though the area was crowded with people, no one came to her aid or tried to restrain respondent. The chase continued all the way down to the subway turnstile, through which the three were ultimately able to escape, using petitioner's Metrocard.

Respondent gave contrary testimony as to the events of that day. He had arrived at the Jewish Board for Family and Children's Services at approximately 10:40 A.M., twenty minutes early for a visit with his daughter. The visit ended at approximately one o'clock. Petitioner then took the child from the building, while respondent waited the obligatory period of time in order to insulate the custodial parent from further contact. During that interval, he spoke with the child's law guardian, who was present at the hearing, but whom the court declined to hear. Respondent and his mother then exited the building and walked up Lafayette Street toward Canal Street. He denied ever seeing petitioner, her mother or his child after leaving the building. After doing some shopping on Canal

Street, he and his mother took the subway home. Respondent denied ever owning a gun, or riding in a car to the visitation that day.

Respondent's mother took the witness stand and corroborated her son's testimony.

Family Court sustained the petition and granted a protective order, finding that a preponderance of the evidence supported petitioner's version, and that neither respondent nor his mother was credible. The court made no findings of fact essential to its conclusion, despite the requirement of CPLR 4213 (b) (*see, Matter of Kyesha A.*, 176 AD2d 381, 382). In such circumstances where a complete record permits an appellate court to make independent factual review and draw its own conclusions, remand to the Family Court is unnecessary (*see, Matter of Jose L. I.*, 46 NY2d 1024; *Matter of Anita U.*, 185 AD2d 378, 379).

Our authority, on review of a non-jury trial, is as broad as that of the trial court's, and enables us to render an independent judgment as warranted by the facts (*Northern Westchester Professional Park Assocs. v Town of Bedford*, 60 NY2d 492, 499). Where we find, as here, no fair interpretation of the evidence to support the fact findings of the hearing court, we are empowered to reject those findings and to substitute our own. In doing so, we note the following observations:

(1) The petition, sworn to just eight days after these supposedly harrowing events, failed even to mention respondent's use of a gun to menace petitioner's life. She would have the court believe either that she forgot to include such a traumatic element or perhaps that she reported it to the intake clerk who failed to record it. We are cognizant of the procedures of the Family Court petition intake clerks, whose rules and regulations require the recordation of full complaints without edit or omission (*see, Weiner v State of New York*, 273 AD2d 95). Petitioner has failed to rebut the presumption that governmental employees properly executed their duty in the ordinary course of business (*News Syndicate Co. v Gatti Paper Stock Corp.*, 256 NY 211, 214). We know that the Family Court fully credited the gun story because the Judge listed this as an aggravating circumstance in the dispositional phase of the hearing. This finding strains credulity to the breaking point, and we vacate it.

(2) Although petitioner's mother also participated as a victim of the crimes allegedly committed by respondent, she was never called as a witness by petitioner, and her absence was never explained. We draw the appropriate adverse inference that the

hearing court failed to do (*Bradshaw v State of New York*, 24 AD2d 930, cited in 1A NY PJI3d 99 [2000 ed]).

(3) In the course of her testimony, petitioner admitted that she was "not that good when it comes to distance." In rendering judgment, the Trial Judge commented that petitioner "doesn't understand distance and time differences." This was putting it too mildly with respect to a witness who at one point, in describing the gun-wielding respondent as being "about a foot" from her, admitted that she didn't know what the linear measurement of "a foot" was. Despite this curious incapacity, the court asserted that "It doesn't substantially affect her credibility." We take a different view, namely, that her difficulties in this area arose from a likelihood that she was trying to fabricate a tale that never happened.

(4) Finally, we reject petitioner's account as completely unworthy of belief. She would ask a court to believe that on a summer weekday afternoon, in broad daylight, she was bombarded with profanity and a fusillade of missiles at close range (none of which found their mark), brutally assaulted, and then, with her mother and 7-year old in tow, chased by the gun-wielding respondent down a busy street that is normally choked with vendors and vehicular traffic, and into a subway station. And all this is supposed to have taken place within the sight of one or two uniformed peace officers, who did nothing.

As we said in *De Mayo v Yates Realty Corp.* (35 AD2d 700, 701, *affd* 28 NY2d 894), "We are not required to give credence to testimony so inherently improbable that we are morally certain it is not true."

The protective order must be vacated. Concur—Williams, J. P., Wallach, Lerner, Andrias and Saxe, JJ.