■ STEVEN D. OBER, Appellant, v JULIETTE ROGERS-OBER, Respondent. [731 NYS2d 7] —Judgment, Supreme Court, New York County (Joan Lobis, J.), entered April 17, 2000, after a nonjury trial, dismissing this action for divorce, reversed, on the law and the facts, without costs, judgment of divorce granted in favor of plaintiff based upon cruel and inhuman treatment and the matter remanded to the trial court for further proceedings.

Cognizant of the deference to be accorded to the findings of the trial court, we nevertheless find that plaintiff's generally unrebutted testimony, which was not found to be incredible, established by a preponderance of the evidence that defendant committed acts constituting cruel and inhuman treatment. Domestic Relations Law § 170 (1) requires a showing that the incidents of physical and verbal abuse testified to by plaintiff actually endangered his physical or mental well-being to such an extent that it is unsafe or improper for plaintiff to cohabit with defendant. In order to make such a showing, it is unnecessary to prove criminal conduct or actual physical or mental injury. "A pattern of conduct which includes verbal abuse and physical harassment is sufficient" (*Bulger v Bulger*, 88 AD2d 895, 896 [citations omitted]).

Also, a less stringent standard of proof is generally applied where, as here, there is a childless marriage of relatively short duration. Thus, despite the fact that plaintiff neither sought nor apparently needed medical or psychiatric treatment, did not seek a court order of protection, and was not permanently driven from the marital home by defendant's behavior, the clear inference to be drawn from the trial evidence is that defendant's conduct during the period in question presents a sufficient threat to plaintiff's mental and physical well-being as to constitute cruel and inhuman treatment within the meaning of the statute. Concur—Williams, J. P., Tom, Andrias and Lerner, JJ.

Saxe, J., dissents in a memorandum as follows: I would affirm the judgment dismissing the divorce action brought by plaintiff husband, because I believe that giving appropriate deference to the findings of the trial court requires this result. "On appellate review of a nonjury trial, 'the decision of the fact-finding court should not be disturbed * * * unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence'" (*Executive Fashions v Howard*, 261 AD2d 159). Accordingly, we may only reject the court's findings and substitute our own where we find that *no* fair interpretation of the evidence supports the facts as found by the trial court (*see, Matter of Allen v Black*, 275 AD2d 207).

This degree of deference is especially appropriate toward the fact-findings of judges in matrimonial cases. The judges who sit in matrimonial parts handle only matrimonial cases, and, pursuant to a set of Uniform Rules applicable only to matrimonial matters (*see,* 22 NYCRR 202.16 [f]), take a hands-on approach to moving cases along to their ultimate resolution and to maintaining order between the parties and in their families. Uniquely in matrimonial actions, the judges, as a rule, get to know the parties prior to trial.

Consequently, not only is the trial court in a better position than this Court to assess the parties' credibility (*see, Blaise v Blaise,* 241 AD2d 680; *Schottenfeld v Schottenfeld,* 152 AD2d 690), but it is also better able to evaluate the impact the parties' acts or words would have had upon each other. This circumstance militates toward affording the findings of a matrimonial judge an exceptional degree of respect and deference unless it is obvious that no fair interpretation of the evidence supported those findings.

It was plaintiff's burden to prove that the conduct of his wife so endangered his physical or mental well-being as to render it unsafe or improper for him to continue cohabiting with her (*see,* Domestic Relations Law § 170 [1]; *Brady v Brady,* 64 NY2d 339). Plaintiff's testimony described a pattern of physical aggressiveness, anger, and frequent instigation of quarrels by defendant; as the majority notes, his description of her conduct was not found to be incredible. However, such a description of aggressive conduct and angry, mean-spirited remarks, no matter how unpleasant we consider them to be, does not *necessarily* satisfy the requirement of Domestic Relations Law § 170 (1), that plaintiff show that the incidents to which he testified had actually endangered his physical or mental well-being, as opposed to, for instance, simply annoying him. The *factual* determination of whether such evidence establishes grounds for divorce under section 170 (1) was made by the Trial Judge, who was able to evaluate the testimony in a fuller context, having had far greater experience with the parties than does this Court. The finding of the Trial Judge should not be overturned merely upon the reasoning that the evidence plaintiff has submitted is *sufficient* for us to infer that defendant's conduct endangered plaintiff's well-being; this Court should only overturn a finding of a Trial Judge when such an inference is *mandated* by the testimony. Such an inference is not mandated here.

There are undoubtedly types of conduct so intrinsically harmful to a spouse's well-being that such an inference is required,

even in the absence of specific testimony to that effect. For instance, behavior that constitutes an assault under the Penal Law (*see, e.g.,* Penal Law § 120.00 [1]), which causes physical injury, could, without more, provide a proper basis for the inference that it would be unsafe for the victim to continue to cohabit with the aggressor. However, given the nature of the events described by plaintiff here, it was within the fact-finding function of the trial court to determine that plaintiff's showing did *not* establish the requisite element of endangerment to his well-being, in the absence of direct testimony to that effect.

The mere use of words such as "hit" or "punch" does not automatically make conduct an assault (*see, e.g., People v Henderson,* 92 NY2d 677, 680). By the same token, such language will not automatically connote conduct endangering the safety or well-being of the person on the receiving end. The question of whether behavior termed hitting, slapping, or punching created a risk of harm to the well-being of the person being hit requires some knowledge of the circumstances, including consideration of the relative sizes and strength of the two people, their respective temperaments, the type of force employed and any resulting physical consequences. Because many of these relevant considerations are far better assessed by the trial court than by an appellate tribunal with a written record, the trial court was in a better position than this Court to evaluate and determine whether the attested-to incidents constituted conduct that so endangered plaintiff's physical or mental well-being as to render it unsafe or improper for him to continue cohabiting with defendant.

The only issue for this Court is whether the trial court's finding of fact was rationally based upon an informed assessment of the evidence. Reference to other cases, in which plaintiffs were found to have proved grounds for divorce based upon a described pattern of conduct, does not mean that any plaintiff who testifies to such conduct is necessarily entitled to a divorce. Each plaintiff must establish that his or her well-being was endangered by the claimed cruel conduct. This, plaintiff failed to do in his testimony. While this Court concludes that such endangerment may be inferred, we should not overturn the conclusion of the Trial Judge unless such an inference is *mandated* by the testimony, which is not the case here.

Nor did the trial court act improperly, as plaintiff suggests, by preventing him from presenting evidence demonstrating that defendant's conduct endangered his physical or mental well-being. The court's ruling merely precluded plaintiff from

testifying that defendant's conduct caused him *physical injury*, and this ruling was properly based upon plaintiff's failure to plead, or indicate at any time prior to trial, that he intended to make such a claim. Plaintiff was not precluded from demonstrating any other form of "harm" aside from that arising from physical injury.

In a veiled attempt to avoid the lack of such a showing in his case, plaintiff characterizes the incidents to which he testified as "domestic violence." In my view, the use of this terminology here is a manipulative strategy that should not be accepted without comment. It amounts to an intentional use of a loaded term, a term that carries the implication that the complained-of conduct necessarily endangered his well-being. Indeed, I consider plaintiff's application of the term "domestic violence" to his circumstances to trivialize this grave, society-wide epidemic. Without minimizing the gravity of domestic violence, and the need to protect all its victims, it should be apparent that just as not all physical contact necessarily endangers a person's physical or mental well-being as is required by Domestic Relations Law § 170, similarly, not all physical contact constitutes "domestic violence."

The conclusion that plaintiff failed to establish grounds for divorce was therefore an evaluation of the evidence that the trial court was justified in making, and should not be overturned by this Court (*see, Rios v Rios*, 34 AD2d 325, 326-327, *affd* 29 NY2d 840).